[Civ. No. 13635. Third Dist. Nov. 15, 1974.]

HARRY A. PHILLIPS et al., Plaintiffs and Appellants, v.
F. H. SEELY, JR., as Auditor, etc., et al., Defendants and Respondents;
JEROME E. WARREN, Intervener and Respondent.

**COUNSEL**

Blade, Farmer & LeClerc, Blade & LeClerc, Robert V. Blade and Raoul J. LeClerc for Plaintiffs and Appellants.

Daniel V. Blackstock, County Counsel, for Defendants and Respondents.

Skow & Jones and Charles A. Skow for Intervener and Respondent.

## Opinion

**CARTER, J.*****—Plaintiff taxpayers appeal after a court trial from a judgment upholding the validity of a contract entered into between the County of Butte and intervener Jerome E. Warren for the rendition of legal services by Warren to certain indigent defendants in criminal matters, indigent juveniles and conservatees in need of and entitled to legal assistance at public expense. The judgment further ordered the defendant, F. H. Seely, Jr., as Auditor of Butte County to pay warrants to Warren pursuant to the contract.

Plaintiffs contend on appeal:

1. Defendant board of supervisors lacked authority, express or implied, to contract with Warren to represent indigents;

2. The contract is invalid because it fails to allocate between "services" and "investigatory expenses" the gross monthly payment to Warren;

3. The contract was the result of solicitation on the part of Warren and is void as violative of public policy;

4. Public policy requires competitive bidding for the contracted services;

5. The contract is contrary to public policy because of a conflict of interest;

6. The board of supervisors failed to give adequate notice of the scope and action to be taken at the board meeting regarding the contract.

Defendants contend that the appeal is moot and since plaintiffs failed to comply with Code of Civil Procedure sections 860-870, they are precluded from challenging the validity of the contract.

### Facts

In early May of 1971, a news article attributable to the County Administrator of Butte County indicated the existence of a problem of providing funds for court-appointed counsel for indigent persons in Butte County. As a result of this article, Warren discussed the matter with Jack McKillop, a member of the Butte County Board of Supervisors. McKillop suggested that Warren submit a proposal regarding legal services, an idea in which John Schroder, an attorney, and Robert Mueller, the Butte County District Attorney, were interested as well. On May 24, 1971, Warren submitted a proposal to the board for the rendition of legal services to indigents which

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

was accepted, with minor changes, on that day. A written contract was executed by the duly authorized chairman of the board, Jere E. Reynolds, and by Warren. Thereafter, Mueller resigned his position as district attorney, and, along with Schroder as associates of Warren, has represented indigents pursuant to court assignment in Butte County. The agreement provided, among other things, that Warren was to assume full responsibility for furnishing with associate counsel the required legal services on a daily basis in two departments of the superior court, the Chico Municipal Court and the Oroville, Gridley, Paradise and Biggs Justice Courts. The county retained the right to cancel the contract upon 10 days' written notice, if for any reason other than a conflict of interest any of the judges of the superior court declined or refused to appoint Warren as defense counsel for indigents.

On August 6, 1971, 73 days after execution of the agreement, plaintiffs filed their complaint to enjoin defendant F. H. Seely, Jr., Auditor of Butte County, from expending public moneys for or as a consequence of services rendered pursuant to the contract. Copies of the summons and complaint were served on the various defendants. Answers were filed, and on December 14, 1971, the case proceeded to trial. At the beginning of the trial the defendants and intervener Warren orally moved to dismiss, contending plaintiffs had failed to comply with Government Code sections 53510 and 53511 and Code of Civil Procedure sections 860-870. Without holding a hearing on whether good cause existed to excuse plaintiffs' noncompliance, the court took the motion under advisement. After the case was tried, briefed and submitted, the trial court held that Code of Civil Procedure sections 860-870 did not apply.

### Discussion of Contentions

1. *Failure of Plaintiffs to File Their Complaint Within 60 Days of Execution of the Contract on May 24, 1971, Was Not Jurisdictional.*

There is no dispute that plaintiffs' complaint was a taxpayers' action seeking to challenge the validity of a contract between a public agency (Butte County Board of Supervisors) and Warren. Government Code section 53510, relating to validating proceedings provides: "As used in this article [art. 5, pt. 1, div. 2, tit. 5] 'local agency' means county, city, city and county, public district or any public or municipal corporation, public agency or public authority."

Government Code section 53511 provides: "A local agency may bring an action to determine the validity of its bonds, warrants, contracts, obli-

gations or evidences of indebtedness pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure."

Code of Civil Procedure section 860 provides: "A public agency may upon the existence of any matter which under any other law is authorized to be determined pursuant to this chapter, and for 60 days thereafter, bring an action in the superior court of the county in which the principal office of the public agency is located to determine the validity of such matter. The action shall be in the nature of a proceeding in rem."

Code of Civil Procedure section 863 provides: "If no proceedings have been brought by the public agency pursuant to this chapter, any interested person may bring an action within the time and in the court specified by Section 860 to determine the validity of such matter. The public agency shall be a defendant and shall be served with the summons and complaint in the action in the manner provided by law for the service of a summons in a civil action. In any such action the summons shall be in the form prescribed in Section 861.1 except that in addition to being directed to 'all persons interested in the matter of [specifying the matter],' it shall also be directed to the public agency. If the interested person bringing such action fails to complete the publication and such other notice as may be prescribed by the court in accordance with Section 861 and to file proof thereof in the action within 60 days from the filing of his complaint, the action shall be forthwith dismissed on the motion of the public agency unless good cause for such failure is shown by the interested person."

On April 2, 1970, Justice Mosk, in *City of Ontario* v. *Superior Court,* 2 Cal.3d 335, 339-344 [85 Cal.Rptr. 149, 466 P.2d 693], carefully summarized the statutory history of Code of Civil Procedure sections 860-870, and the consequences which resulted from the enactment of sections 53510 and 53511 of the Government Code in 1963. The Supreme Court stated: "If, as the City here argues, the word 'contracts' in section 53511 is taken to mean *any* contract into which the agency may lawfully enter, the far-reaching expansion of the statute becomes apparent. The vast majority of such an agency's dealings are necessarily undertaken by means of contracts; some involve routine ministerial matters, but others embody important policy decisions affecting the public at large.

"The public's opportunity to challenge those decisions, moreover, is commensurately restricted by this legislation. Section 863 of chapter 9 provides that if the public agency does not initiate validating proceedings, 'any interested person may bring an action within the time and in the court specified by Section 860 of this chapter to determine the validity of such matter.' This seems innocuous enough, until one reads section 869: 'No

*contest* except by the public agency or its officer or agent of any thing or matter under this chapter *shall be made* other than within the time and the manner herein specified.' (Italics added.) In other words, while section 863 says that an interested person 'may' bring such an action, section 869 says he *must* do so or be forever barred from contesting the validity of the agency's action in a court of law. Yet no such restriction is placed on the agency itself, which is in effect authorized by section 869 to disregard the 60-day statute of limitations imposed by section 860.

"The practical consequence of this statutory scheme should be clearly recognized: an agency may indirectly but effectively 'validate' its action *by doing nothing to validate it;* unless an 'interested person' brings an action of his own under section 863 within the 60-day period, the agency's action will become immune from attack whether it is legally valid or not. Indeed, in the case at bar the City concedes this to be so. Thus a statute which begins by providing a remedy to be pursued by public agencies, expressly declaring it to be 'in the nature of a proceeding in rem' (§ 860), concludes by making it unnecessary for such agencies to do anything at all, and the incidental or derivative remedy of an 'interested person' turns out to be controlling. This is truly a case of the tail wagging the dog." (*Id.* at pp. 341-342.) (Original italics; fn. omitted.)

Our research has failed to disclose any legislative action which has sought to extend the 60-day period of time in which an action may be brought by "interested persons" to challenge the validity of public agency contracts of the *kind* subject to the provisions of sections 860 and 863. We hold that the trial court correctly concluded that the contract for rendition of legal services to the county by Warren was not subject to sections 860 and 863, and thus the question of "good cause" for failure to publish summons is of no significance. (*City of Ontario* v. *Superior Court, supra,* 2 Cal.3d 335; *Arnold* v. *Newhall County Water Dist.* (1970) 11 Cal.App.3d 794, 803 [96 Cal.Rptr. 894].)

In *City of Ontario, supra,* at pages 343-344, the court stated: "On its face, section 53511 would seem to be applicable. It lists, as matters for validation under chapter 9, 'bonds, warrants, *contracts,* obligations or evidences of indebtedness' (italics added). There is no limitation or qualification on the word 'contracts,' and it would therefore appear to include a multipurpose municipal contract such as the Ontario Motor Stadium Agreement. Yet the legislative history of the statute suggests a contrary result. First, the Legislative Counsel's digest of the bill proposing section 53511 characterized the measure as one allowing 'a local agency to bring an action to determine the validity of evidences of indebtedness.' Second,

section 53511 was enacted as part of chapter 3 of part 1, division 2, title 5, of the Government Code. Chapter 3 is entitled 'Bonds,' and deals exclusively with the power of local agencies to sell their bonds, replace defaced or lost bonds, and pledge their revenues to pay or secure such bonds. If section 53511 was intended to be a provision of general application, logically it should have been placed in article 4 ('Miscellaneous') of chapter 1 ('General') of the same part, in which a group of such unrelated matters are collected. Third, the key language of section 53511—'bonds, warrants, contracts, obligations or evidences of indebtedness'—was taken directly from section 864 of chapter 9; under well-known canons of statutory interpretation, it should ordinarily be given the same meaning as it had in the earlier statute. But as a perusal of the companion 1961 legislation reveals, when chapter 9 was adopted it was made applicable only to such matters as the legality of the local entity's existence, the validity of its bonds and assessments, and the validity of joint financing agreements with other agencies. If section 53511 was intended to reach any and all contracts into which an agency may lawfully enter, the restricted language of section 864 was inappropriate for that purpose. Finally, that language is peculiarly inapt for expressing such a general meaning in any event, as it lists the word 'contracts' in the midst of four other terms which all deal with the limited topic of a local agency's financial obligations."

In the matter before us, plaintiffs sought an injunction to prevent the alleged illegal expenditure of public funds, an action expressly authorized by section 526a of the Code of Civil Procedure, and to compel restitution, both remedies predating the enactment of section 53511 of the Government Code. ■ We hold that while the agreement to pay Warren the sum of $12,500 per month for legal services of course involves a public agency financial obligation, it is not the kind of financial obligation contemplated to be automatically validated absent a challenge within the 60 days proscribed in sections 860 and 863 for instruments, such as bonds and assessments, whose very marketability may well depend upon their prompt and automatic validation upon the passing of the 60-day period.

2. *Authority of the Board of Supervisors to Contract for Rendition of Legal Services to Indigents.*

Plaintiffs urge there are but two methods whereby public funds may be disbursed by a county to attorneys for legal services rendered to indigent persons in criminal, juvenile or mental health matters, namely, pursuant to Government Code section 27700 or Penal Code section 987.2.

■ In the area of criminal proceedings the right of an accused person, whether *indigent* or otherwise, to the immediate and effective assistance of

counsel is settled law in California. (Cal. Const., art. I, § 13; U.S. Const., 6th Amend.; *In re Williams* (1969) 1 Cal.3d 168 [81 Cal.Rptr. 784, 460 P.2d 984]; *People* v. *Ibarra* (1963) 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487]; Pen. Code, § 987.) ■ Legal services for indigent persons at public expense are also mandated in juvenile and mental health matters where a charge of wrongdoing is involved or restraint of liberty is possible. (Welf. & Inst. Code, §§ 634, 5111; *In re Joseph T.* (1972) 25 Cal.App.3d 120, 126 [101 Cal.Rptr. 606].)

Section 27700 of the Government Code provides in part as follows: "The board of supervisors of any county *may* establish the office of public defender for the county." (Italics ours.)

The duties of the public defender if the office is so established by the board, whether elective or appointive, are specifically defined in Government Code section 27706.

The agreement of May 25, 1971, did not establish the office of public defender in Butte County but was merely a contract between the county and Warren, whereby the latter agreed to provide, with a few exceptions, the usual and customary public defender legal services enumerated in Government Code section 27706 to indigent persons in Butte County for an agreed sum of $12,500 per month.

Plaintiffs urge that since a public defender's office was not established, the board of supervisors was without authority to enter into the subject contract with Warren, because Penal Code section 987.2 is the only remaining basis upon which counsel for indigents may be assigned and a reasonable compensation determined and disbursed from public funds.

Penal Code section 987.2 reads: "(a) In any case in which a person, including a person who is a minor, desires but is unable to employ counsel and in which counsel is assigned in the superior court, municipal court, or justice court to represent such a person in a criminal trial, proceeding or appeal, such counsel, in a county or city and county in which there is no public defender, or in a case in which the court finds that because of conflict of interest or other reasons the public defender has properly refused to represent the person accused, shall receive a reasonable sum for compensation and for necessary expenses, the amount of which shall be determined by the court, to be paid out of the general fund of the county.

"(b) The sum provided for in subdivision (a) may be determined by contract between the court and one or more responsible attorneys after consultation with the board of supervisors as to the total amount of compensation and expenses to be paid, which shall be within the amount of

funds allocated by the board of supervisors for cost of assigned counsel in such cases.

"(c) The board of supervisors may by contract provide that any public defender duly appointed or elected may charge reasonable fees to the Department of Corrections for representing inmates of prisons under its control, and the Department of Corrections may upon approval by the court pay such fees into the county treasury to be placed in the general fund of the county.

"(d) Counsel shall be appointed to represent, in the municipal or justice court, a person who desires but is unable to employ counsel, when it appears that such appointment is necessary to provide an adequate and effective defense for defendant."

As we have seen, the contract between the board and Warren expressly reserved to the board the right to cancel the agreement upon 10 days' notice, "in the event the Superior Court or any of the judges thereof declines or refuses to appoint attorney as defense counsel for indigents as provided for herein for any reason other than a conflict of interest . . . ."

Plaintiffs forcefully urge that if a public defender's office has not been established in the county, then in those instances where private counsel is assigned to represent an indigent person under section 987.2 of the Penal Code, the court must fix a reasonable sum as compensation and expenses for such legal services.

This court, in referring to the fixing of reasonable compensation in court-assigned cases under section 987a (now § 987.2), held in *Halpin* v. *Superior Court* (1966) 240 Cal.App.2d 701, 706 [49 Cal.Rptr. 857]: "To substitute for the independent exercise of discretion of the court in each case where counsel is assigned to represent a criminal defendant under section 987a, the order fixing compensation dated November 16, 1965, may conceivably in some cases constitute an abuse of judicial discretion . . . ." Thus the trial court could not refuse to exercise its discretion by simply adopting a daily rate of compensation which had been previously established by the board of supervisors for court-assigned attorneys. In substance, where assigned counsel for an indigent person questions the reasonableness of the compensation to be allowed, it is for the court and not the board to make that determination. In addition, since *Halpin*, section 987.2, subdivision (b), was amended to provide that the reasonable sum for compensation of court-assigned counsel to represent indigents "may be determined by contract between the court and one or more responsible attorneys after consultation with the board of supervisors as to the total

amount of compensation and expenses to be paid, which shall be within the amount of funds allocated by the board of supervisors for the cost of assigned counsel in such cases."

In *Ingram* v. *Justice Court* (1968) 69 Cal.2d 832, 842 [73 Cal.Rptr. 410, 447 P.2d 1391], the Supreme Court stated: "In short, the fundamental flaw in the People's position is its unstated assumption that the courts are the guardians of the county coffers. In our system of government this is not, and should not be, their role. The Constitution and the statutes commit that responsibility, more appropriately, to the board of supervisors, assisted by such officers as the district attorney, the county counsel, the treasurer, the controller and auditor, and the inquisitorial body of citizens, the grand jury."

█ Consideration of the statutory and case law impels the conclusion that where a public defender's office has not been established in a county, the matter of reasonable compensation of court-assigned counsel for indigent persons understandably involves some degree of cooperation between the court and the board of supervisors. The availability of a reasonable sum of money to reasonably compensate assigned counsel where required by law is the responsibility of the board of supervisors; whether indigent persons entitled to counsel at public expense are being adequately represented by reasonably compensated counsel is for the court to determine. Where the court is required to determine the reasonableness of compensation, section 987.3 of the Penal Code enumerates the factors which the court shall consider.

In substance, plaintiffs really urge that sections 987.2 and 987.3 create a *right* in every member of the Bar in a given county to be appointed to represent indigent persons at public expense where there is no established public defender's office. █ Such contention is not necessarily consistent with the purpose of providing reasonable compensation for counsel assigned to indigent persons. That purpose is to insure indigent persons the legal services of competent attorneys who are at least reasonably compensated, and thereby contribute to the ultimate objective of the people of this state, who are the source of the compensation, to provide equal justice under the law to any accused person regardless of financial condition.

The record indicates that the instant controversy arose because the Board of Supervisors of Butte County was rightly concerned with the possible increased cost of compensation and expenses which would be incurred for court-assigned counsel to defend indigent persons during the ensuing fiscal year. While the board has the duty to provide the money to reasonably compensate defense counsel for indigent persons in Butte County, the people of

Butte County are entitled to expect their elected representatives, both the board of supervisors *and* the courts to act with fiscal responsibility. The saving of substantial public funds without diminishing the quality of reasonably compensated defense counsel in indigent cases is not only prudent, but tends to enhance the public's respect for our judicial system.

It is apparent the agreement between Warren and the board of supervisors would be of little impact if the courts in which Warren agreed to provide counsel for qualified indigents *refused* to assign him to act. Thus to the extent that the court remains the final authority for assignment of counsel, the court retains the inherent means and carries out its contracting responsibility of passing on the matter of reasonable compensation for assigned counsel in indigent cases. The judicial act of assigning counsel with knowledge of the compensation contract between the board of supervisors and Warren constitutes judicial approval and ratification of reasonable compensation under the circumstances.

Finally, subject to the foregoing rule that *the court* is to determine whether indigent persons entitled to counsel at public·expense are being adequately represented by reasonably compensated counsel, we think authority for the challenged contract is found in section 31000 of the Government Code (as it then read); "The board of supervisors may contract with and employ any person for the furnishing to the county, or to a county officer, or for any court within the county, or for and on behalf of any district within the county for furnishing to the district, of special services and advice in financial, economic, accounting, engineering, legal, medical, or administrative matters, or in matters related to the courts, by any persons specially trained and experienced and who is competent to perform the special services required.

"The authority herein given to contract. shall include the right of the board of supervisors, to contract for the issuance and preparation of payroll checks.

"The board may pay from any available funds such compensation to any such expert as it deems proper for the services rendered."

While the last sentence of the foregoing code section may appear to be inconsistent with the ultimate responsibility of the court in determining reasonable compensation for court-assigned counsel, the exercise of this duty by the court arises where there is no contract between the board of supervisors *and counsel* assigned by the court to represent indigents or where assigned counsel challenges the adequacy of compensation sought to be set by the board (see *Halpin, supra*).

If in the judgment of the court a particular counsel possesses the requisite ability to represent adequately an indigent person in the particular matter before the court, and such counsel is satisfied with the compensation contractually arrived at between himself and the board of supervisors, there is generally no need for judical intervention to fix reasonable compensation under the particular circumstances. This is the case at bench.

Accordingly we hold that the Board of Supervisors of Butte County had the authority pursuant to Government Code section 31000 to enter into the agreement with Warren.

3. *Allocation of Compensation Between Services and Investigatory Expenses.*

Paragraph 6 of the agreement provides that the cost of criminal investigators is to be borne by Warren. Plaintiffs urge this creates a "conflict of interest in the ultimate[,] [n]o matter how conscientious and .ethical such counsel may be," and "thus, the attorneys representing the indigents face the cruel dilemma resulting from the fact that every dollar spent for investigation means a dollar less for the three attorneys."

We see no dilemma or conflict at all, since an attorney's duty runs to his client, not the attorney's pocket. We reject plaintiffs' contention that a mere possible opportunity for misconduct is a legal basis to void the contract. It is a judgmental matter for defense counsel to decide how much time and expense required for investigatory or research effort may be reasonably productive for the defense based upon the particular case. An attorney is duty bound to explore reasonably and seek to verify possible defenses in order to meet the constitutional standard of adequate defense counsel. (*People* v. *Ibarra, supra,* 60 Cal.2d 460.)

Our Supreme Court has expressed in broad language the principles applicable to appointed criminal defense counsel: "[W]hen the public defender is appointed to represent a defendant accused of a crime, he becomes the attorney for said defendant for all purposes of the case and to the same extent as if regularly retained and employed by the defendant. The judge of the trial court has no more authority or control of him than he has of any other attorney practicing before his court. The public defender is free from any restraint or domination by the district attorney or of the prosecuting authorities. He is as free to act in behalf of his client as if he had been regularly employed and retained by the defendant whom he represents. Were it not so his client would not be afforded the full right 'to have assistance of counsel for his defense' which the Constitutions, both state and federal, give to one accused of crime. With such plenary powers given a public

defender when appointed to defend one accused of crime, it necessarily follows that no act of his in advising his client or in defending the latter upon the charge against him can be considered in any different light than if such act were performed by an attorney regularly employed and retained by the defendant." (*In re Hough* (1944) 24 Cal.2d 522, 528-529 [150 P.2d 448].)

Finally, we think the interest of the accused indigent, his counsel and the public may well be better served by the employment of a full-time investigator by Warren, rather than on a case-by-case basis.

### 4. *The Contract Was Not the Result of Solicitation by Warren.*

Plaintiffs urge that since the board of supervisors did not take formal action to invite Warren's offer *before* it was submitted, the offer to furnish legal services to indigents in Butte County amounted to solicitation of business by an attorney in violation of Business and Professions Code sections 6152 and 6153. The record shows that a news article reflected the board's concern with anticipated increasing costs of court-appointed counsel in the various courts of the county, and in fact Warren was requested by a member of the board to submit an offer for consideration by the board respecting such matter. There is no evidence that the idea to submit the offer originated with Warren (see *People* v. *Levy* (1935) 8 Cal.App.2d Supp. 763, 769 [50 P.2d 509]), and we find no "solicitation of business" by Warren within the meaning of the Business and Professions Code.

### 5. *Competitive Bidding Was Not Required.*

 Plaintiffs seek to bring the agreement to render legal services to indigent persons within the purview of public works contracts. They cite no authority for such position, and our research fails to disclose any. Here the service to be rendered at public expense was professional in nature. Since the board has a responsibility both to the public and to the indigent person in need of counsel, the board is entitled to rely upon its own knowledge and judgment as to the reputation of counsel in the county in order to equate the experience, reputation and skill of counsel with the amount of funds to be allocated to the defense of indigent cases, and thus contribute in cooperation with the courts to the ultimate goal that indigent persons be adequately represented by adequate counsel.

### 6. *There Was No Conflict of Interest.*

 Plaintiffs urge next that because the District Attorney of Butte County resigned and became an associate of Warren rendering legal services

to indigent persons, a conflict of interest was created. None of the conflict cases cited by plaintiffs are applicable since all involved situations where defense counsel, at the time of representation of the accused, maintained directly or indirectly a continuing relationship with the prosecutor's office, or held a confidential attorney-client relationship with the accused and later became the prosecutor.

In *People* v. *Rhodes* (1974) 12 Cal.3d 180, 186 [115 Cal.Rptr. 235, 524 P.2d 363], our Supreme Court recently disapproved of the appointment of a city attorney with *prosecutorial responsibilities* to represent an indigent defendant. The case at bench is clearly distinguishable since the record before us fully establishes that Mr. Mueller, the former district attorney, resigned from office and severed his connections with the prosecutor's office *before* he undertook assignment to represent indigent persons in Butte County. In addition, such assigned services were rendered on a per diem basis to indigent persons whose case arose *after* Mueller left the district attorney's office, thus eliminating even the appearance of impropriety. (*Rhodes, supra,* at p. 185.)

Section 6131 of the Business and Professions Code provides in part: "Every attorney is guilty of a misdemeanor and, in addition to the punishment prescribed therefor, shall be disbarred:

". . . . . . . . . . . . . . . . . . .

"(b) Who, having himself prosecuted or in any manner aided or promoted any action or proceeding in any court as district attorney or other public prosecutor, afterwards, directly or indirectly, advises, in relation to or takes any part in the defense thereof, as attorney or otherwise, or who takes or receives any valuable consideration from or on behalf of any defendant in any such action upon any understanding or agreement whatever having relation to the defense thereof."

Plaintiffs do not urge that Mueller violated section 6131, subdivision (b), *supra,* nor does the record before us even support such an inference. Finally, we note that the agreement was between Warren and the board of supervisors. Whom Warren engaged to assist him in the performance of his to-be-assigned duties did not affect the validity of the agreement.

7. *Adequacy of Notice of Board's Action.*

There is no dispute that the meeting of May 25, 1971, at which the subject agreement with Warren was considered, approved and executed, was a regular meeting of the Butte County Board of Supervisors. The agenda item made it clear that the board was to hear and consider an offer to supply

public defender services to the county. There is no evidence that the agenda was not properly posted as required by Government Code section 25151 and it must be thus presumed that the county clerk duly performed his duty. (Evid. Code, § 664.)

The subject matter and contract were not of such nature as to require special statutory notice. Plaintiffs' reliance on *Carlson* v. *Paradise Unified Sch. Dist.* (1971) 18 Cal.App.3d 196 [95 Cal.Rptr. 650], is misplaced. ▮ In *Carlson,* we stated at page 199: "There has been a long and vigorous battle fought against secrecy in government. [Citations.] It is now the rule that local governing bodies, elected by the people, exist to aid in the conduct of the people's business, and thus their deliberations should be conducted openly and with due notice with a few exceptions not applicable here. (See Gov. Code, § 54950 et seq.; cf. 3 Witkin, Summary of Cal. Law (1960) Constitutional Law, § 116, p. 1919; 70 Ops.Cal.Atty.Gen. 113.)"

We strongly reaffirm the foregoing rule, with the observation that where the subject matter is sufficiently defined to apprise the public of the matter to be considered and notice has been given in the manner required by law, the governing body is not required to give further special notice of what action it might take. ▮ The agenda item made it clear that under the heading of public defender there had been an offer to supply public defender services to the county by Jerome Warren and John Schroder, two local lawyers who were interested in supplying such services to the county. We hold that the definition of the subject matter and notice given were sufficient to meet due process standards.

Judgment affirmed.

Richardson, P. J., and Janes, J., concurred.

A petition for a rehearing was denied November 29, 1974, and appellants' petition for a hearing by the Supreme Court was denied January 8, 1975. Richardson, J., did not participate therein.