[Civ. No. 36871. First Dist., Div. Four. Mar. 23, 1976.]

JERRY L. SMITH et al., Plaintiffs and Appellants, v.
MT. DIABLO UNIFIED SCHOOL DISTRICT et al.,
Defendants and Respondents;
INTERNATIONAL BUSINESS MACHINES CORPORATION,
Real Party in Interest and Respondent.

### COUNSEL

Boatwright, Adams & Safine, Stuart A. Safine and Bruce Borad for Plaintiffs and Appellants.

John B. Harmon and Harold L. Howard as Amici Curiae on behalf of Plaintiffs and Appellants.

John B. Clausen, County Counsel, and Silvano Marchesi, Deputy County Counsel, for Defendants and Respondents.

Pillsbury, Madison & Sutro, Walter R. Allan and James J. Walsh for Real Party in Interest and Respondent.

### OPINION

**CALDECOTT, P. J.**—The question presented by this appeal is whether Code of Civil Procedure sections 860-870 (the validating statutes) govern a school district's contract for the purchase of a computer. We conclude that they do not.

Appellants, as taxpayers, commenced this action for injunctive and declaratory relief against respondents Mt. Diablo School District (District), the members of the board of education (Board), superintendent of the District, and International Business Machines Corporation (IBM).

On November 13, 1973, the Board passed a motion that bids be called for on the purchase of a computer, based upon certain stated specifications. These specifications, set forth in a notice to bidders on November 14, listed items allegedly "available from only one supplier and/or

manufacturer," namely, IBM, and therefore allegedly prevented open competitive bidding from other responsible bidders as required by state law. (Gov. Code, § 4380.)

On December 7, 1973, bids were opened and summarized. The Board determined that the three bids lower than that of IBM did not meet the specifications, and they were therefore disqualified. At its meeting on January 29, 1974, the Board passed a motion that the IBM bid "be accepted, subject to review by legal counsel; the money for the purchase to come from District bond funds."

On March 14, 1974, a purchase order was prepared by the District and a contract was signed by the superintendent, who was also secretary of the Board, for the purchase. Appellants alleged that the Board had not delegated the power to contract to the superintendent, nor had they approved or ratified the contract by resolution or otherwise.

Respondents moved for dismissal of the action on the ground that the complaint showed on its face that it had not been filed within 60 days from the award of the contract, citing section 860 et.seq. of the Code of Civil Procedure. The motion was granted and judgment entered for respondents. The appeal is from the judgment.

I

Appellants' initial contention is that the trial court mistakenly construed their complaint and proceeded on the unfounded assumption that a contract "existed" under the language of Code of Civil Procedure section 864: "For the purposes of this chapter, bonds, warrants, contracts, obligations, and evidences of indebtedness shall be deemed to be in existence upon their authorization. Bonds and warrants shall be deemed authorized as of the date of adoption by the governing body of the public agency of a resolution or ordinance authorizing their issuance, and contracts shall be deemed authorized as of the date of adoption by the governing body of the public agency of a resolution or ordinance approving the contract and authorizing its execution." Appellants base this argument on two interrelated points: the court below improperly interpreted the pleadings, and the contract signed by IBM and the superintendent was not validly authorized or approved, nor within the statutory powers of the Board.

The first of these allegations is refuted by the plain language of the complaint, and requires no further analysis. The *physical* existence of a contract is clear.

The second point is the crux of appellants' complaint that the contract signed by IBM and the superintendent is invalid. However, appellants err in their conclusion that an *invalid* contract is necessarily *not in existence* for purposes of the validating statutes, assuming that they apply to such contracts at all. ■ The *validity* of the matters encompassed by Code of Civil Procedure sections 860-870 is the precise question to be answered thereunder; hence, cognizance under those sections is not based upon the *validity* of the substance or procedures attacked, but upon the specific definitions provided in Code of Civil Procedure section 864, *supra.* The fairness of the bidding process, compliance with applicable statutes and ordinances, and proper execution and authorization all are relevant at this juncture only insofar as they relate to the applicability of Code of Civil Procedure section 864.

The pertinent provisions of that section specify that "contracts . . . shall be deemed to be in existence upon their authorization. . . . [C]ontracts shall be deemed authorized as of the date of adoption by the governing body of the public agency of a resolution or ordinance approving the contract and authorizing its execution."

Appellants rest their argument on the contention that the Board, admittedly the "governing body of the public agency" involved, did not approve the contract or authorize its execution, nor did it delegate its authority to the superintendent or any other person under the provisions of Education Code section 15961. They argue that the allegedly improper bidding procedures precluded a "valid" contract from being formed, though they acknowledge that "[i]f the bidding procedures herein were correct under the law, perhaps there could have been a contract formed on January 29, 1974 when the bid was awarded to IBM." As noted above, this concern with "validity" of the contract misses the mark.[1]

■ At the time the written bid was accepted by the Board at its January 29 meeting, a contract was formed. (*United States* v. *Purcell Envelope Co.,* 249 U.S. 313, 319-320 [63 L.Ed. 620, 624-625, 39 S.Ct. 300];

---

[1]Appellants contend that "[i]f a contract could be formed by violating bidding procedures, the bidding regulations themselves would be totally useless." However, it is clear that such procedural violations can be a ground for *invalidating* the contract under Code of Civil Procedure sections 860-870, if they apply to such contracts at all.

*Berkeley Unified Sch. Dist.* v. *James I. Barnes Const. Co.*, 112 F.Supp. 396, 398-399; *City of Susanville* v. *Lee C. Hess Co.*, 45 Cal.2d 684, 694 [290 P.2d 520]; 15 Ops. Cal. Atty. Gen. 123, 125.) The motion of the Board, passed by a vote of four to one, was therefore the requisite approval of the contract and authorization of its execution, as a motion, is the equivalent of a resolution under such circumstances. (5 McQuillin, Municipal Corporations (1969 rev. vol.) § 15.02, pp. 43-45, § 15.06, pp. 56-58, § 15.08, pp. 63-65; cf. *City of Sausalito* v. *County of Marin,* 12 Cal.App.3d 550, 565-566 [90 Cal.Rptr. 843]; *McPherson* v. *Richards,* 134 Cal.App. 462, 466 [25 P.2d 534].) Whether the superintendent, who is also secretary of the Board, was authorized to thereafter sign the formal written contract is irrelevant for purposes of section 864; that is one of the matters which may be tested under the validating procedures themselves, if they apply to such contracts. ■ It must be reiterated that the finding of "existence" of a contract, as defined in Code of Civil Procedure section 864, has no bearing on the question of *validity* or enforceability of that contract under the applicable laws.

## II

The primary question raised on this appeal is whether the validating statutes, Code of Civil Procedure sections 860-870, govern the instant action.[2] The issue revolves around the language of Government Code section 53511, which reads: "A local agency may bring an action to determine the validity of its bonds, warrants, *contracts,* obligations or evidences of indebtedness pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure." (Italics added.) It is the meaning of the word "contracts" that leads to the basic dispute herein. Both parties assert that this language was taken from Code of Civil Procedure section 864, but they reach different conclusions as to the interpretation of that latter section. The court below impliedly found that "contracts" includes the type of agreement in the instant case, and therefore applied the provisions of Code of Civil Procedure sections 860, 863, and 869, to bar appellants' complaint as untimely in view of their failure to bring an action within 60 days of the "existence of the contract."

---

[2]Neither party contends that Education Code section 21708, applying the Code of Civil Procedure validating act to school district bond proceedings, applies to the instant case. However, amici curiae raise the additional question of whether the Education Code provision precludes applicability of the validation statutes, through other laws (such as Gov. Code, § 53511), to other actions of school districts, such as contracts of the type here in issue.

Nothing in the legislative history of the Education Code section (enacted in 1959 and amended simultaneously with enactment of the validating act to which it refers)

Only two cases have previously analyzed the precise statutes in issue here. *Phillips* v. *Seely,* 43 Cal.App.3d 104 [117 Cal.Rptr. 863], was a taxpayers' action challenging the validity of a contract between a county board of supervisors and a private party for the rendition of legal services. The court unanimously held that "the contract for rendition of legal services to the county by Warren was not subject to sections 860 and 863," in spite of the language of Government Code section 53511. (43 Cal.App.3d at pp. 111, 112.)

This result in *Phillips* rested almost entirely upon certain dicta in the Supreme Court opinion in *City of Ontario* v. *Superior Court,* 2 Cal.3d 335 [85 Cal.Rptr. 149, 466 P.2d 693]. In that decision, the court considered at length the question presented in the instant action, but decided the case on the ground that the "complex and debatable" issue of applicability at least constituted the "good cause" required by section 863 of the Code of Civil Procedure for relief from default (for failure to comply with the summons procedure of the validating statutes). (2 Cal.3d at pp. 345-347.) ■ Although not controlling, the dicta is entitled to substantial weight, particularly in view of its thoroughness. (*San Joaquin etc. Irr. Co.* v. *Stanislaus,* 155 Cal. 21, 28 [99 Cal.Rptr. 365]; *Granger* v. *Sherriff,* 133 Cal. 416, 417 [65 P. 873]; *In re Olson,* 37 Cal.App.3d 783, 789 [112 Cal.Rptr. 579].)

It is clear that the language of Government Code section 53511, while perhaps appearing unambiguous and unqualified, cannot be so deemed in view of the legislative background. It is true that where the meaning of a statute is plain and unambiguous, and there is no uncertainty as to legislative intent, there is no need for construction and courts should not indulge in it. (*Caminetti* v. *Pac. Mutual L. Ins. Co.,* 22 Cal.2d 344, 354 [139 P.2d 908].) ■ However, " 'The literal meaning of the words of a statute may be disregarded . . . to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole.' " (*County of Sacramento* v. *Hickman,* 66 Cal.2d 841, 849, fn. 6 [59 Cal.Rptr. 609, 428 P.2d 593], quoting *Silver* v. *Brown,* 63 Cal.2d 841, 845 [48 Cal.Rptr. 609, 409 P.2d 689].)

---

indicates such an exclusivity. Application of both Government Code section 53511 and Education Code section 21708 to school district presents no evident disharmony, though of course, the more specific statute would control any differences. Neither is there any indication that the more general provision, later enacted, was intended to repeal the earlier section by implication. Rather, the statutes may be harmonized and reconciled and effect given to both.

The Supreme Court enumerated in *City of Ontario,* various aspects of the legislative history suggesting inapplicability of the validating statutes to contracts of the type here in question. Certain other features of that historical background, however, suggest an opposite interpretation. Most of the statutes enacted simultaneously with the validating act included language involving bonds and assessments. Some, however, referred to validation of contracts; although most of these latter concerned contracts with other—often federal—agencies, some involved contracts of acquisition and construction.

Thus, Water Code section 43730 was enacted (Stats. 1961, ch. 1531, p. 3367), and its reference to "contracts . . . or the taking of any other action by the district or by the board" clearly encompasses powers previously granted to enter into contracts of construction or improvement. (Wat. Code, §§ 43300-43309.)[3] Streets and Highways Code section 5265 (Stats. 1961, ch. 1523, p. 3361), likewise relating to "the validity of any contract," has reference to prior sections dealing with contracts for construction, and for acquisition of materials, supplies and equipment. (Sts. & Hy. Code, § 5240 et seq.) Similarly, Streets and Highways Code section 10601 (as amended by Stats. 1961, ch. 1526, p. 3364) relates in part to contracts for construction of improvements. (Sts. & Hy. Code, § 10500 et seq.) Similar language in the numerous uncodified Water Act provisions enacted simultaneously with Code of Civil Procedure sections 860-870[4] reaffirms the conclusion that, at least in certain instances, the Legislature understood the word "contracts" in section 864 to include matters other than "the limited topic of a local agency's financial obligations." (City of Ontario, *supra,* 2 Cal.3d at p. 344.)

This is not dispositive of the issue, however, for it must be apparent that "contracts" as used in section 864 had no static meaning. Rather, the term must be defined by the legislative context in which it appears *in particular follow-up enactments.* Thus, although the unqualified word "contract" is utilized in a number of the statutes created simultaneously with the validating act, it is clear that in some of these sections no broad meaning is intended or even possible. (See e.g., Wat. Code, §§ 23225, 35855.) The Supreme Court's admonition that "under well-known

---

[3]Indeed, the predecessor to this 1961 legislation also referred to validation of, inter alia, such contracts. (Wat. Code, § 43900, repealed Stats. 1961, ch. 1531, p. 3367.) Other pre-1961 statutes were similarly worded. (See Summary of Existing Validating Procedures, Judicial Council of Cal., 18th Biennial Rep. (1961) pp. 116-118.)

[4]These sections are listed at 36 State Bar J. (1961) page 717. Those including validation of a "contract" are Statutes 1961, chapters 1482-1485, 1489-1491, 1494, 1501, 1506, 1514-1516, 1559.

canons of statutory interpretation, [the language of Gov. Code, § 53511] . . . should ordinarily be given the same meaning as it had in the earlier statute [§ 864]" (*City of Ontario, supra*, 2 Cal.3d at p. 343) is therefore of little guidance in construing Government Code section 53511.

The statutory context of that latter section, the legislative counsel's characterization of the measure, and the inaptness of its language if intended to express the broad general meaning found by the lower court here, are all described in *City of Ontario*. (2 Cal.3d at pp. 343-344.) Certain rules of construction are also of assistance in ascertaining the legislative intent, our primary objective. (*East Bay Garbage Co.* v. *Washington Township Sanitation Co.*, 52 Cal.2d 708, 713 [344 P.2d 289]; *California Sch. Employees Assn.* v. *Jefferson Elementary Sch. Dist.*, 45 Cal.App.3d 683, 691 [119 Cal.Rptr. 668].) The intent of the Legislature may be ascertained from all of the circumstances and from the consequences that flow from the various interpretations of the statute. (*Pulcifer* v. *County of Alameda*, 29 Cal.2d 258, 262 [175 P.2d 1]; *Estate of Ryan*, 21 Cal.2d 498, 513 [133 P.2d 626].) ■ Substance rather than form should be considered if strict adherence to form would result in injustice, or absurd or unjust results would follow from a literal interpretation of the language. (*Dempsey* v. *Market Street Ry. Co.*, 23 Cal.2d 110, 113 [142 P.2d 929]; *Golden* v. *City of Oakland*, 49 Cal.App.3d 284, 291 [122 Cal.Rptr. 400].)

The untoward results of the construction urged by respondents have been appropriately described by the Supreme Court and are worth repeating here: "The practical consequence of this statutory scheme should be clearly recognized: an agency may indirectly but effectively 'validate' its action *by doing nothing to validate it;* unless an 'interested person' brings an action of his own under section 863 within the 60-day period, the agency's action will become immune from attack whether it is legally valid or not. Indeed, in the case at bar the City concedes this to be so. Thus a statute which begins by providing a remedy to be pursued by public agencies, expressly declaring it to be 'in the nature of a proceeding in rem' (§ 860), concludes by making it unnecessary for such agencies to do anything at all, and the incidental or derivative remedy of an 'interested person' turns out to be controlling. This is truly a case of the tail wagging the dog." (2 Cal.3d at pp. 341-342.)

Such an onerous practical result is contrary to the purposes, background and statutory context of both sections 53511 and 860-870. ■ We must conclude that it was not the intention of the

Legislature that the contract between the District and IBM is the kind of financial obligation contemplated to be automatically validated absent a challenge within the 60 days.

## III

Appellants request that attorney's fees and costs be awarded on this appeal. ■ Recognizing that no statutory (Code Civ. Proc., § 1021) or contractual provisions authorize fees, they rely on certain recognized nonstatutory grounds as authority for their request.

However, at this stage of the proceedings, none of the asserted nonstatutory bases is available. Appellants have thus far not even established their proper representation of a class, nor does the opinion herein express any view or indication of the outcome of the action on the merits. No specific fund has yet been created or preserved (*D'Amico* v. *Board of Medical Examiners,* 11 Cal.3d 1, 25 [112 Cal.Rptr. 786, 520 P.2d 10]; *Mandel* v. *Hodges,* 54 Cal.App.3d 596 [127 Cal.Rptr. 244]), nor has any "substantial benefit" yet been attained. (*Knoff* v. *City etc. of San Francisco,* 1 Cal.App.3d 184, 203-204 [81 Cal.Rptr. 683].) The issue of attorney's fees is thus prematurely raised.

The judgment is reversed.

Christian, J., and Emerson, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.