[Civ. No. 15757. Third Dist. Aug. 24, 1976.]

JEAN E. WALTERS, Plaintiff and Appellant, v.
COUNTY OF PLUMAS et al., Defendants and Respondents.

## COUNSEL

Norman & Eames and James K. Norman for Plaintiff and Appellant.

Baird B. McKnight, County Counsel, and Alan H. Thieler for Defendants and Respondents.

## OPINION

**PARAS, J.—** ▮ Plaintiff appeals from an "Order Granting Dismissal of Complaint" filed August 21, 1975. This order is not appealable. (Code Civ. Proc., § 904.1.) No judgment was entered following the August 21, 1975, order, so the appeal is technically premature. Nevertheless, it is clear that the order was intended to be a final disposition of the controversy, and it is signed by the court. Accordingly, on our own motion we treat it as a final judgment. (*Martino* v. *Concord Community Hosp. Dist.* (1965) 233 Cal.App.2d 51 [43 Cal.Rptr. 255]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 69, p. 4083.)

This is an action by a Plumas County citizen and taxpayer against the County of Plumas (hereinafter "county") and two individual defendants, arising out of the implementation of a solid waste disposal plan by the county. The trial court dismissed plaintiff's complaint for failure to comply with Code of Civil Procedure sections 860-870 (the "validating" statutes), in that it was not filed within 60 days after the cause of action arose. The question is whether the validating statutes apply.

The county's plan was initiated because of a presidential order stating that after July 1974 there would be no further open burning dumps on federal lands; this required the closing of several such dumps Plumas County had maintained. In addition, the State of California directed that after January 1, 1975, there would be no further open dump burning anywhere in Plumas County. Due to the much greater cost of land fill operations, it was determined that the number of dumps should be

reduced from 15 open burning dumps to 3 land fill dumps. It was further determined that the most practical way to operate the waste disposal system was to award franchises to private individuals.

The county established a solid waste advisory committee to study and make recommendations with respect to the solid waste disposal system. The members of the committee included defendant Le Roy Austin and County Supervisor Leonard Ross, a brother of defendant Woodrow Ross.[1]

On November 27, 1973, pursuant to recommendations of the committee, the board of supervisors enacted ordinance 73-31 dealing with the regulation of collection and disposal of solid waste. On February 13, 1974, the board adopted a resolution inviting bids for four franchise areas. On April 2, 1974, two franchises were awarded to the Feather River Disposal Company owned by defendant Le Roy Austin, a third to Portola Garbage Company owned by defendant Woodrow Ross, and the fourth to Lee's Disposal, a company not involved in this litigation.

On May 7, 1974, the board found that none of the franchisees were able to obtain financing to purchase certain costly heavy equipment required by the franchise agreements without assurance that the county would assume payments in the event of default. Accordingly, the board authorized agreements to give such assurance, on condition that in the event of default, title to the equipment would be assigned to the county. Agreements were signed with all three companies between May 8 and May 14, 1974. On June 18, 1974, the board adopted resolution 74-2610, setting forth and establishing an annual waste disposal fee (tax) on each residential and commercial unit, payable to the county.

Plaintiff's complaint was filed on December 12, 1974. The named plaintiff alleges that she is a taxpayer in Plumas County, and "brings this action for herself and other residents and citizen taxpayers of Plumas County that are included in the CITIZENS COMMITTEE FOR BETTER GOVERNMENT IN PLUMAS COUNTY, who are assessed for and are liable to pay or who, within one year of the commencement of this action, have paid a fee composed partly of a tax relating to the Solid Waste Collection and Disposal Ordinance No. 73-31 of Plumas County, California."

---

[1]Some of the factual material is taken from voluminous exhibits attached to plaintiff's motion for reconsideration filed in the trial court.

The first cause of action alleges (1) that Woodrow Ross, by virtue of his blood relationship to Supervisor Leonard Ross was able "to gain information in advance of the bidding and awarding of the franchisees [*sic*], concerning specifications, financing and qualification so as to submit a low bid," (2) that Leonard Ross' participation in the awarding of a franchise to his brother was a "conflict of interest," and (3) that Le Roy Austin's position on the committee "enabled him to gain an advantage over others in the awarding of franchises," this also being a "conflict of interest." The second cause of action alleges that the notice inviting bids was ambiguous, resulting in one bidder, Sierra Pacific Disposal, making a bid which although lower overall, was rejected because it was not separately made for each franchise area. On the first and second causes of action plaintiff prays that the bidding and awarding of franchises be set aside.

The third cause of action challenges the agreements by the county to guarantee payments on the heavy equipment. Plaintiff alleges that the fact that these agreements were necessary indicates that the successful bidders were "not financially qualified to have been awarded a franchise. . . ." Plaintiff also alleges that each agreement was "without lawful consideration and constitutes an unlawful pledge of County funds and credit for the benefit of private enterprise and constitutes an ultra vires agreement thereby making said agreement . . . void and unconstitutional." Plaintiff prays that the agreements be declared null and void.

The fourth cause of action alleges on information and belief that ordinance 73-31 and resolution 74-2610, which placed the solid waste management program into operation, do not comply with Government Code section 66780, in that the plan has not been approved by a majority of the cities containing a majority of the population of the county, and there has been no determination that the plan is in accord with State of California guidelines. Plaintiff alleges that for this reason she and the citizen's committee are withholding "the payment of fees that have been billed against them;" they seek "a judicial determination of their respective rights and obligations" and an injunction staying the enforcement of the program.

The fifth cause of action alleges a failure to prepare an environmental impact report (as allegedly required by Pub. Resources Code § 21100 et seq.) prior to the implementation of the solid waste disposal plan, and again seeks declaratory and injunctive relief.

All defendants filed demurrers to the complaint, but in view of the dismissal, they were not ruled upon. The court found that there was no good cause for failure to comply with the validating statutes. (See Code Civ. Proc., § 863.) Plaintiff challenges the applicability of these sections to her complaint.

Chapter 9 of the Code of Civil Procedure (§§ 860-870) was first enacted in 1961. It was proposed by the Judicial Council to provide a uniform and speedy procedure for determining the validity of certain public agency bonds or assessments, or contracts with other agencies, or the legality of the existence of a public agency. (See *City of Ontario* v. *Superior Court* (1970) 2 Cal.3d 335, 340 [85 Cal.Rptr. 149, 466 P.2d 693].) In 1963, Government Code sections 53510 and 53511 were enacted, extending the applicability of chapter 9 to virtually all public entities, and to " 'an action to determine the validity of [the entity's] bonds, warrants, contracts, obligations or evidences of indebtedness.' " As pointed out by the Supreme Court in *City of Ontario, supra,* "If, as the City here argues, the word 'contracts' in section 53511 is taken to mean *any* contract into which the agency may lawfully enter, the far-reaching expansion of the statute becomes apparent." (2 Cal.3d at p. 341; italics in original.)

The *City of Ontario* court discussed the question at length, as follows: "The phenomenon, we concede, was implicit in the original version of chapter 9, in which section 869 first appeared, drawn from preexisting statutes. But its effect on the taxpayers was greatly exacerbated by the enactment of Government Code sections 53510 and 53511 in 1963. Prior to that time the number of 'interested persons' was likely to be few, proportionate to the limited applicability of chapter 9; and because of the special nature of the statutes involved, the 'interested persons' were likely to have notice of the agency's action. It was perhaps not inappropriate to impose a relatively brief statute of limitations on such individuals. But since 1963, if the City's construction of the word 'contract' is correct, virtually every taxpayer has become an 'interested person' with regard to virtually every action of a local public agency. It is unreasonable to assume that the members of such a large and amorphous group are likely to have prompt notice of each agency action affecting them. Yet whether such a person has such notice or not, he is given only 60 days in which (1) to discover the existence, scope and effect of the agency's action, (2) to reach a conclusion as to its validity, (3) to determine whether the agency has instituted a validating proceeding or

imminently intends to do so, and (4) if not, to prepare and file a proceeding of his own. In an age of increasingly complex government, this seems a heavy burden to impose on the vigilant taxpayer. And it is certainly a far cry from the Judicial Council's original concern for conformity with the Rules on Appeal.

"The case at bar is dramatic indicium of the wisdom of the Council's plan to implement the general validating statute by carefully selected follow-up legislation. As noted above, section 860 makes chapter 9 applicable to any matter which is authorized to be determined pursuant thereto 'under any other law.' The only possible 'other law' in the present case is Government Code sections 53510 and 53511. The question is whether those sections apply; as will appear, the answer is far from clear.

". . . . . . . . . . . . . . . . . . .

"On its face, section 53511 would seem to be applicable. It lists, as matters for validation under chapter 9, 'bonds, warrants, *contracts,* obligations or evidences of indebtedness' (italics added). There is no limitation or qualification on the word 'contracts,' and it would therefore appear to include a multipurpose municipal contract such as the Ontario Motor Stadium Agreement. Yet the legislative history of the statute suggests a contrary result. First, the Legislative Council's digest of the bill proposing section 53511 characterized the measure as one allowing 'a local agency to bring an action to determine the validity of evidences of indebtedness.' Second, section 53511 was enacted as part of chapter 3 of part 1, division 2, title 5, of the Government Code. Chapter 3 is entitled 'Bonds,' and deals exclusively with the power of local agencies to sell their bonds, replace defaced or lost bonds, and pledge their revenues to pay or secure such bonds. If section 53511 was intended to be a provision of general application, logically it should have been placed in article 4 ('Miscellaneous') of chapter 1 ('General') of the same part, in which a group of such unrelated matters are collected. Third, the key language of section 53511—'bonds, warrants, contracts, obligations or evidences of indebtedness'—was taken directly from section 864 of chapter 9; under well-known canons of statutory interpretation, it should ordinarily be given the same meaning as it had in the earlier statute. But as a perusal of the companion 1961 legislation reveals, when chapter 9 was adopted it was made applicable only to such matters as the legality of the local entity's existence, the validity of its bonds and assessments, and the validity of joint financing agreements with other agencies. If section

53511 was intended to reach any and all contracts into which an agency may lawfully enter, the restricted language of section 864 was inappropriate for that purpose. Finally, that language is peculiarly inapt for expressing such a general meaning in any .event, as it lists the word 'contracts' in the midst of four other terms which all deal with the limited topic of a local agency's financial obligations." (2 Cal.3d at pp. 342-344, fn. omitted.)

Relying upon the *Ontario* language, this court in *Phillips* v. *Seely* (1974) 43 Cal.App.3d 104, 112 [117 Cal.Rptr. 863], held that a contract to hire a public defender was "not the kind of financial obligation contemplated to be automatically validated absent a challenge within the 60 days proscribed [*sic*] in sections 860 and 863 for instruments, such as bonds and assessments, whose very marketability may well depend upon their prompt and automatic validation upon the passing of the 60-day period." And after examining the *Ontario* reasoning, as well as other legislative history, the Court of Appeal in *Smith* v. *Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 412, 421 [128 Cal.Rptr. 572], held that "it was not the intention of the Legislature that the contract between the District and IBM [for the purchase of a computer, after receipt of bids] is the kind of financial obligation contemplated to be automatically validated absent a challenge within the 60 days."

■ These are the only cases which have considered the question. They are unanimous and persuasive. The franchise contracts here are indistinguishable from the computer contract in *Smith*. Accordingly, we hold that chapter 9 does not apply to the first two causes of action.

■ The third cause of action challenging the guaranty of payments on the heavy equipment is more troublesome. We perceive the essential difference between those actions which ought and those which ought not to come under chapter 9 to be the extent to which the lack of a prompt validating procedure will impair the public agency's ability to operate. The fact that litigation may be pending or forthcoming drastically affects the marketability of public bonds; it has little effect upon such matters as a contract with a public defender or the purchase of a computer. We feel that the possibility of future litigation is very likely to have a chilling effect upon potential third party lenders, thus resulting in higher interest rates or even the total denial of credit, either of which might well impair the county's ability to maintain an adequate waste disposal program. Accordingly, we hold that Code of Civil Procedure sections 860-870 are applicable to the third cause of action.

■ The validating statutes do not apply to the fourth and fifth causes of action because the county's ability to operate is not meaningfully impaired by their subject matter. No third party financial interests are affected. ■ Moreover, with regard to the fifth cause of action, the Environmental Quality Act of 1970 has its own statute of limitations, Public Resources Code section 21165 et seq., which being specifically applicable, takes precedence over the general provisions of Code of Civil Procedure section 860.

Thus we will sustain the trial court's ruling as to the third cause of action but reverse it as to the others. The result is that plaintiff may proceed to trial on the first, second, fourth and fifth causes of action.[2] If they ultimately prevail on any of said causes of action and thus invalidate one or more franchises or any other action of the county, there will be no adverse effect upon the guaranty which is the subject of the third cause of action; the lender will not lose its security on sums theretofore loaned to the franchisees and guaranteed by the county.

The judgment is reversed as to the first, second, fourth and fifth causes of action and affirmed as to the third cause of action. Plaintiff shall recover costs on appeal.

Regan, Acting P. J., and Evans, J., concurred.

[2]Our ruling is of course limited to the effect of the validating statutes upon the facts pleaded. We otherwise express no opinion on the merits of the demurrers or any other pretrial procedures which defendants may choose to pursue.