[S. F. No. 19950. In Bank. Oct. 2, 1959.]

EAST BAY GARBAGE COMPANY (a Corporation), Appellant, v. WASHINGTON TOWNSHIP SANITATION COMPANY (a Corporation), Respondent.

Quaresma & Rhodea and Fred E. Avera for Appellant.

LeRoy A. Broun & Associates and Bernard M. King for Respondent.

SPENCE, J.—Plaintiff sought (1) an injunction restraining defendant from soliciting customers and from collecting and disposing of garbage within the former boundaries of the Irvington Sanitary District and (2) damages and loss of profits. Defendant cross-complained for similar injunctive relief against plaintiff, plus damages for alleged infringement of defendant's rights in this area. The cause was submitted upon an agreed statement of facts. Judgment was entered on defendant's cross-complaint, with the proviso that the court, pursuant to the parties' stipulation, reserved the determination of the amount of damages until disposition of this appeal. We have concluded that the record sustains the propriety of the relief awarded defendant.

On February 17, 1955, the Irvington Sanitary District published a notice soliciting proposals for the collection and disposal of garbage within the district for a 10-year period under an exclusive contract establishing a schedule of fees to be paid the garbage collector by those inhabitants of the district utilizing the garbage collector's services. Only one publication of the notice was made. Within the time allotted, both defendant and plaintiff's predecessor submitted bids. Defendant proposed to pay the district $1.50 a year for each unit serviced. At the time there were approximately 1,500 units within the district requiring service, so that defendant's proposal, in effect, would amout to the payment of $2,250 a year. Plaintiff's predecessor offered to pay the district a flat sum of $1,200 a year for the first five years of the contract and $1,800 a year for the second five years. On March 8, 1955, the Irvington Sanitary District awarded the exclusive contract to plaintiff's predecessor. Admittedly, the contract was not let pursuant to section 6515.5 of the Health and Safety Code.

On January 23, 1956, the city of Fremont was incorporated and its territorial limits include the then existing boundaries of both the Irvington Sanitary District and the Union Sanitary District. On February 9, 1956, the city of Fremont adopted an ordinance (No. 15) prohibiting any person from collecting garbage within the city limits unless that person

had either a contract with the city or a valid, subsisting contract with the Irvington Sanitary District which was in effect on January 24, 1956. On March 27, 1956, the Irvington Sanitary District was consolidated with and became a part of the Union Sanitary District.

On April 10, 1956, the city of Fremont awarded defendant an exclusive 10-year contract for the collection of garbage "within the corporate limits of the City of Fremont and areas to be annexed to said City, with the exception of such portions of said annexed areas as are serviced under a pre-existing legally binding contract with a legally constituted public body and with the further exception of the area included within the Irvington Sanitary District." This language pertaining to the exception of "the area included within the Irvington Sanitary District" was properly construed by the trial court in the light of the other provisions of the contract and of the provisions of the above-mentioned Ordinance Number 15. So construed, the trial court correctly concluded that it gave defendant the right to collect garbage within that area unless the area was then "serviced under a pre-existing legally binding contract." To construe the exception more broadly, and without regard to said Ordinance Number 15, would mean that in the absence of a "pre-existing legally binding contract," the area in question would have been left without any garbage collection service, a result which could not reasonably have been intended. Both plaintiff and defendant have continuously collected garbage within the area which formerly comprised the Irvington Sanitary District.

From these facts the trial court concluded that section 6515.5 of the Health and Safety Code applied to the "franchise and exclusive contract" of plaintiff's predecessor with the Irvington Sanitary District; that said section required the district to publish a notice requesting bids once a week for two consecutive weeks and to award the contract to the lowest responsible bidder; that since the fees to be charged the residents of the district were all uniform, the "lowest responsible bidder" was the bidder who would pay "the largest sum to the district for the right and privilege of collecting and disposing of garbage within its boundaries for a fee"; that since said section was not complied with, "plaintiff's franchise and exclusive contract is null and void and plaintiff can predicate no rights under it"; that because it is "null and void," defendant can attack its validity in an action for

an injunction where defendant can show a legal right to collect and dispose of garbage in the area in question; that since plaintiff does not have a contract with the city of Fremont and the contract of plaintiff's predecessor with the Irvington Sanitary District is void, Ordinance Number 15 of the city of Fremont prohibits plaintiff from collecting and disposing of garbage within the city limits, including that portion of the city which formerly comprised the Irvington Sanitary District; that defendant's April 10, 1956, contract with the city gives it the exclusive franchise and right to collect and dispose of garbage within the mentioned area; and that defendant is entitled to damages for loss of profits as well as an injunction restraining plaintiff from collecting garbage within the city's corporate limits. Judgment was entered accordingly, and plaintiff appeals.

The principal question presented is that of the applicability of section 6515.5 of the Health and Safety Code relating to contract awards by a sanitary district. (Sanitary District Act of 1923, Health & Saf. Code, §§ 6400-6915.) That section, at the time here involved, read as follows: "If the total cost of any work exceeds two thousand five hundred dollars ($2,500), the district shall publish a notice requesting bids therefor by publication for once a week for two consecutive weeks in a newspaper of general circulation in the county in which the district is located and award the contract to the lowest responsible bidder. . . .

"If more than one bid is received, the board shall award a contract, as specified in the notice requesting bids, to the lowest responsible bidder. . . .

"Any contract to which this section applies that is not let pursuant to this section is void."

Plaintiff contends that this section was not applicable to the contract between its predecessor and the Irvington Sanitary District because the contract did not involve the expenditure of public moneys—that is, the district's payment of moneys from its treasury—but rather contemplated that the costs of the garbage collection would be paid directly by the inhabitants of the district utilizing such services. The section is a typical competitive bidding statute applicable to the letting of contracts by a governmental agency depending on the basic amount involved—here $2,500. (See 10 McQuillin on Municipal Corporations, 3d ed., § 29.33, p. 279.) The section does not state who must pay the $2,500 before the

statute applies but plaintiff argues that the stipulated "cost of any work" as there used means such cost "to be paid directly from the treasury of the sanitary district." Defendant argues that this is an unreasonable limitation to place upon the scope of the statute and injects an added factor when the amount of the proposed expenditure is alone made the determinative consideration for the statute's application. In support of its position, defendant cites *McKim* v. *Village of South Orange,* 133 N.J.L. 470 [44 A.2d 784], involving a closely similar situation.

In the McKim case, the village of South Orange enacted an ordinance declaring it unlawful for anyone to collect or remove garbage or other refuse within the village without a license issued by the board of trustees. The ordinance further provided that only one license would be issued at any given time, and that the fees to be charged individuals for the garbage collecting services were to be fixed by the board of trustees. Acting pursuant to the ordinance, the trustees set the rate schedule and licensed a particular company to collect within the village for the period of one year. The ordinance and the trustees' action pursuant thereto were declared void by the New Jersey Supreme Court as in violation of a competitive bidding statute requiring garbage collection contracts to be awarded to the lowest responsible bidder where the cost of the work was in excess of $1,000.

In so holding, the court reasoned as follows (44 A.2d 785-786) : "[The ordinance] . . . provides, as we have said, that the work shall be paid for by the householder to the scavenger at a price; such a price as the trustees shall fix. The work has been costing the municipality more than $75,000 per year; and the cost under the proposed method will be but little, if any, less than that. Certainly the aggregate of such moneys to be paid to and received by the scavenger will greatly exceed the sum of $1,000, which is the cost limit for contracting without public bidding. . . . Obviously, the village could not contract directly for the doing of the work without calling for bids. The proposed method is, we think, in violation of a public policy, implicit in these and other statutes, that public work exceeding a limited sum shall not be awarded except upon advertisement and to the lowest responsible bidder. The evils attendant upon an award without open bidding are not less under license than under direct contract. *Splitting the total cost among the property-users by a system that leaves to them no choice but to incur and pay the expense does not*

*alter the fact that in essence an award of public work at a price of many thousands of dollars is being made to a private contractor without competition in bidding."* (Emphasis added.)

This reasoning accords with the purport of section 6515.5 of the Health and Safety Code, prescribing the procedure for the district's letting of a public works contract where the cost exceeds the basic amount of $2,500. The statute, in effect, authorized two methods for the district's handling of the work involved. The district might do the work itself or it might contract with someone else to do it. If the latter course were chosen, then where the expenditure involved was in excess of $2,500, no valid contract could be made unless the bids were publicly advertised as prescribed and unless the contract were let to the lowest responsible bidder. In such circumstances, the lowest responsible bidder would be the bidder who, on the basis of a uniform fee schedule, returned to the district the largest sum for the privilege granted by the district.

█ It is a cardinal rule of statutory construction that the language of a statute should be construed to effect, rather than defeat, its evident object and purpose. (*Larsen* v. *Industrial Acc. Com.*, 34 Cal.2d 772, 776 [215 P.2d 16] ; *People* v. *Centr-O-Mart*, 34 Cal.2d 702, 704 [214 P.2d 378] ; see also *Reiter* v. *Chapman*, 177 Wash. 392 [31 P.2d 1005, 1007, 92 A.L.R. 828].) █ Plaintiff concedes the applicability of the statute where the district itself undertakes to do the work, in the sense that it will pay the scavenger firm directly for the services performed, and the cost to plaintiff exceeds $2,500. It is no less applicable where, as here, the district contracts with one of competitive bidding scavenger firms to do the work required, and has the cost of removal of the garbage paid directly to the firm by the inhabitants of the district. The same reasoning prevails in protection of the public interest to insure the greatest possible value for the least expenditure. To hold otherwise would permit circumvention of the statute contrary to its purport and reasonable construction. (See *Gamewell F.A.T. Co.* v. *Los Angeles,* 45 Cal.App. 149 [187 P. 163].)

Whether the contract between plaintiff's predecessor and the Irvington Sanitary District be considered a "franchise as well as an exclusive contract," as found by the trial court, is immaterial on the merits of this case. (See *California Reduction Co.* v. *Sanitary Reduction Works,* 126 F. 29, 40 [61

C.C.A. 91].) In any event, the contract was "void" for failure of the district to comply with the governing statute (Health & Saf. Code, § 6515.5), and no legal rights can be predicated upon it. (*City of San Pablo* v. *City of Richmond,* 148 Cal.App.2d 358, 361 [306 P.2d 949].) Here plaintiff seeks equitable relief on the basis of a void contract and it cannot properly object to defendant's attack on the validity of such contract coincident with defendant's assertion of a legal right to the garbage collection privilege in the area in question. (See 10 McQuillin on Municipal Corporations, 3d ed., § 29.30, p. 268; *Miller* v. *McKinnon,* 20 Cal.2d 83, 87-88 [124 P.2d 34, 140 A.L.R. 570]; *Clinton Construction Co.* v. *Clay,* 34 Cal.App. 625, 628-629 [168 P. 588].) This is a distinguishable situation from that in *Gurtz* v. *City of San Bruno,* 8 Cal.App.2d 399 [48 P.2d 142], where plaintiff taxpayers sought to have a contract granting an exclusive franchise for the removal of garbage declared void, and the exclusive remedy was declared to be in quo warranto.

Since the contract of plaintiff's predecessor with the Irvington Sanitary District was void, defendant properly maintains that its subsequently executed contract with the city of Fremont and Ordinance Number 15, above-mentioned, give it the exclusive right to the collection of garbage within the area involved.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., White, J., and Peek J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.