[No. A051545. First Dist., Div. Three. Jan. 29, 1992.]

CONSTRUCTION INDUSTRY FORCE ACCOUNT COUNCIL et al.,
Plaintiffs and Appellants, v.
DELTA WETLANDS et al., Defendants and Respondents.

COUNSEL

Stanton, Kay & Watson, Lawrence H. Kay and William L. Porter for Plaintiffs and Appellants.

Nomellini & Grilli, Dante John Nomellini and Daniel A. McDaniel for Defendants and Respondents.

OPINION

MERRILL, J.—This is an appeal from a judgment of the superior court denying a petition for writ of mandamus. We affirm.

### HISTORICAL BACKGROUND

During the years 1980 to 1986, the Sacramento/San Joaquin Delta area experienced severe flooding resulting in levee failure and/or extensive damage on a number of the islands and tracts in that location. Much of the damage occurred to levees operated and maintained by reclamation districts existing and operating pursuant to California Water Code section 50000 et seq. The districts turned to state and federal disaster relief funds to help them finance the necessary repairs. Subsequent concern over the manner in which the districts dispensed these monies triggered the enactment of the Delta Flood Protection Act of 1988 (the Act) (Stats. 1988, ch. 28, § 1 et seq., pp. 186-192) and related legislation.

What the Act did in essence was to amend, repeal and add various sections to the Water Code relating to flood control and to authorize financial assistance to local agencies for maintenance and improvement of levees in the Delta area. Water Code sections 12300 and 12311, which were added, establish a Delta Flood Protection Fund and require the Department of Water Resources (the Department) to develop and implement a program of flood control projects. One of the outgrowths of the latter two provisions is the current Delta Levee Subventions Program which is administered by the Reclamation Board under the auspices of the Department.

The Act was enacted in March 1988 and took effect immediately. In September of the same year that the Legislature drafted the Act, it enacted Senate Bill No. 1893 (SB 1893) (Stats. 1988, ch. 1042, §§ 1-3, pp. 3383-3385). SB 1893 took effect January 1, 1989, and added an article entitled Reclamation District Article 60.5 (§ 20920 et seq.) to the Public Contract Code. The essence of the legislation was to subject reclamation districts to competitive bidding requirements for the first time. Article 60.5 requires the districts to let to the lowest responsible bidder all contracts for any improvement or unit of work, or for materials or supplies in excess of $25,000, except as otherwise provided in the article. (Pub. Contract Code, § 20921.) The article prohibits districts from splitting or separating work projects into smaller work orders in order to evade its provisions. (Pub. Contract Code, § 20922.) It sets out various powers and duties of a district's board of trustees including the requirements for advertising applicable work projects for the bidding process. (Pub. Contract Code, § 20923.) It further states, "The board shall have the right to reject any and all bids not suitable to the best interests of the district. In its discretion, the board may readvertise for new bids or negotiate an offered bid, if it is the sole bid received and the negotiated price does not exceed the offered bid for the work as advertised. If two or more bids are the same and are the lowest, the district board may accept the one it chooses. If no bids are received, the district board may proceed to complete the project by force account or contract without further compliance with this article." (Pub. Contract Code, § 20925.)

FACTS

On May 29, 1990, respondent Reclamation District No. 2026 (hereafter District No. 2026) notified the Department that it intended to participate in the Delta Levee Subventions Program for the fiscal year 1990-1991. According to the record, District No. 2026 has jurisdiction over 12.93 miles of levee surrounding Webb Tract, a large island in eastern Contra Costa County which was inundated by floodwaters in 1980 due to a levee failure. Along

with the notification, District No. 2026 included an application for a total of $3,083,500 in subvention program funds for the maintenance and rehabilitation of the levee. The application indicated that some of the work would be performed by the district's own employees.

On May 30, 1990, respondent Reclamation District No. 2025 (hereafter District No. 2025) also notified the Department of its intention to participate in the program for the fiscal year 1990-1991. District No. 2025 governs 10.97 miles of levees surrounding Holland Tract, another large island in eastern Contra Costa County which similarly experienced levee failure and flooding in 1980. In its application, District No. 2025 sought a total of $1,362,000 in subvention program monies for the maintenance and rehabilitation of its levees. It also indicated that some of the work would be performed by district employees.

According to the parties, neither of these applications has been acted on as yet by the Department or the Reclamation Board.

On July 13, 1990, appellants[1] filed the underlying petition claiming that respondents'[2] applications are in violation of the competitive bidding requirements of Public Contract Code article 60.5 (article 60.5) and the guidelines established by the Reclamation Board for administration of the Delta Levee Subvention Program. Appellants allege that respondents have failed to comply with the bidding requirements by refusing to identify in their applications which projects are covered by the article or to follow competitive bidding requirements. Appellants state that they will suffer irreparable harm if respondents' applications are approved by the Department.

In response to the petition, respondents state that the first phase of the work covered by the applications will be performed by "district forces" as opposed to contract work. Such work, they maintain, does not come within the purview of article 60.5. They have not taken a position at this point that all future maintenance and rehabilitation of its levees under the subvention program will be performed by their own forces.

In denying the petition, the trial court ruled that the reclamation districts can perform work in excess of $25,000 with their own employees without it being opened to competitive bidding. We find no error in this decision.

---

[1]Appellants are: Construction Industry Force Account Council (CIFAC); Dutra Construction Company, Inc.; A. M. Stephens; Asta Construction; and Claude C. Wood Company.

[2]Also named as a respondent in the petition is Delta Wetlands, a California corporation. At the time the instant petition was filed, John Winther, who was president of Delta Wetlands, was a member of the board of trustees for District No. 2025 and president of the board of trustees for District No. 2026.

DISCUSSION

Preliminarily, we note that while appellants are claiming a violation of the competitive bidding requirements of both article 60.5 and the subventions program, we concern ourselves only with that part of appellants' claim which relates to the article itself. Appellants acknowledge that respondents' applications for participation in the subventions program have yet to be reviewed by the Department and the Reclamation Board. Since these are the administrative bodies charged with the responsibility of administering the subventions program, evaluation of the applications in terms of the program's requirements falls to them initially. It would be premature for us to consider the matter before these entities had the opportunity to do so. Having said this, we proceed to the issue at hand.

 This case really boils down to primarily one question—whether the Legislature intended that work performed by the districts' own employees be subject to the competitive bidding requirements of article 60.5 (i.e., Pub. Contract Code, § 20920 et seq.). We agree with respondents that this was not the Legislature's intention.

Such a conclusion is compelled, first of all, by the clear language of the statute itself. The initial provision of article 60.5 states in pertinent part, "This article applies to contracts by reclamation districts . . . ." (Pub. Contract Code, § 20920.) This is followed by the key provision, "All contracts for any improvement or unit of work, or for materials or supplies, in excess of twenty-five thousand dollars ($25,000) shall be let to the lowest responsive, responsible bidder, except as otherwise provided in this article." (Pub. Contract Code, § 20921.) These provisions make it clear that the statute applies to certain contracts by the districts—i.e., contracts for improvements or units of work, materials or supplies exceeding $25,000. It does not apply to improvements or projects for which the districts do not contract, such as projects performed by their own employees using their own equipment and supplies.

Appellants would have us read into the statute the requirement that the districts contract all work projects pertaining to the maintenance and improvements of their levees. However, article 60.5 does not say this and, as a rule, it is improper to read things into statutory provisions, particularly when they are clearly stated as here. "A court should not presume the Legislature intended to legislate by implication. [Citation.] Although in years past it may have been necessary for courts to read into a statute provisions not specifically expressed by the Legislature, the modern rule of construction disfavors such practice. [Citation.]" (*San Diego Service Authority for*

*Freeway Emergencies* v. *Superior Court* (1988) 198 Cal.App.3d 1466, 1472 [244 Cal.Rptr. 440].) As noted by respondents, if the Legislature had wanted to include such a requirement in article 60.5, it could have. Clearly, it did not.

 Our interpretation of the subject statute finds added support in the fact that the Reclamation Board has adopted the same construction. In a June 16, 1989, addendum to its Preliminary Procedures and Criteria for the Delta Levee Subvention Program, the Board defines "[w]ork subject to [SB 1893/ article 60.5]" as follows: "[T]his work includes 'any improvement or unit of work.' In the context of the Subventions Program, this work includes all levee rehabilitation and maintenance activities, *except* where such work is done as part of District Operations." (Italics added.) The addendum defines "District Operations" as "work that is done by District Owned Equipment and work forces on the payroll of the Reclamation District." Although neither the Reclamation Board nor the Department is assigned the task of administering article 60.5 per se, they are charged with the duty of administering the subventions program. And since compliance with SB 1893/ article 60.5 is one of the prerequisites for participation in that program, clearly their views regarding its interpretation are relevant.

 "It is a well-established rule of statutory construction that ' "[t]he contemporaneous and practical construction of a statute by those whose duty it is to carry it into effect, while not controlling, is always given great respect. And a contemporaneous interpretation long acquiesced in by all persons who could possibly have an interest in the matter, has been held to be sufficient to justify a court in resolving any doubt it might have as to the meaning of ambiguous language employed by the legislature, in favor of sustaining such long unquestioned interpretation." ' [Citation.] Under these circumstances, the administrative practice will be upheld ' "unless it is *clearly* erroneous or unauthorized." ' [Citations.]" (*Steelgard, Inc.* v. *Jannsen* (1985) 171 Cal.App.3d 79, 88 [217 Cal.Rptr. 152].)[3]

 Finally, we find our interpretation of the subject statute in keeping with the legislative purpose behind it and other statutes like it. Generally speaking, the Legislature's purpose in requiring governmental entities to open the contracts process to public bidding is " '. . . to guard

[3]The record indicates that because of the instant dispute, John Winther, president of Delta Wetlands, wrote the Department seeking clarification as to these issues. We note that in response to the inquiry, the chief of the Department's subventions and flood management section wrote: "[W]e agree that the work the District performs with its own forces is not 'contracted'; thus, no competitive bidding is required since the provisions of SB 1893 only apply to 'contracts.' "

against favoritism, improvidence, extravagance, fraud and corruption; to prevent the waste of public funds; and to obtain the best economic result for the public. [Citation.]' " (*San Diego Service Authority for Freeway Emergencies* v. *Superior Court, supra,* 198 Cal.App.3d at p. 1473.) Such concerns are obviously more apparent in a case where a district is contracting with outside sources rather than merely making use of its own employees and equipment. In the latter instance, it would be counterproductive to subject a district to the competitive bidding process.

■ " 'One of the cardinal rules of construction requires that words be given such interpretation as will promote rather than defeat the *general purpose and policy* of the law. [Citation.] A statute should be interpreted so as to produce a result that is reasonable. [Citation.] If two constructions are possible, that which leads to the more reasonable result should be adopted.' [Citation.]" (*Granberry* v. *Islay Investments* (1984) 161 Cal.App.3d 382, 388 [207 Cal.Rptr. 652].)

■ Having interpreted article 60.5 in this fashion, we find no abuse of discretion on the trial court's part in the denial of appellants' petition for writ of mandamus.

■ "A writ of mandate lies 'to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; . . .' [Citation.] ' "Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty [citation]." [Citation.]' [Citation.] [¶] As to the petitioner's interest, the writ may not be issued where the injury is purely theoretical and the petitioner fails to show any benefit would accrue to him if the writ were issued, or that he will suffer any detriment if it is denied. [Citations.]" (*Steelgard, Inc.* v. *Jannsen, supra,* 171 Cal.App.3d at p. 83.)

■ Here, it is clear that appellants did not meet the prerequisites for issuance of the writ. Appellants' petition alleges that respondents have violated the competitive bidding requirements of article 60.5. These allegations are based on respondents' applications for state subvention funds. Although respondents' applications are generally unspecific in how the work described therein is to be performed, they do acknowledge that at least some of the work will be performed by district forces and will have a cost in excess of $25,000. Based on our interpretation of the statute, such work would be exempt from the competitive bidding requirements. Thus, appellants have failed to establish a duty on the part of respondents to submit this

work to the competitive bidding process. Further, they have failed to show that they will suffer any detriment in the denial of their petition.[4]

Appellants claim that respondents do not presently have adequate personnel or equipment to perform the work described in the applications. They maintain that the intent of the districts is to evade the competitive bidding requirements by splitting the work into smaller projects and by hiring outside help without inviting bids. However, these are bare allegations and nothing more. There is nothing in the record to substantiate these charges. Again, it was appellants' burden to establish a violation on respondents' part and they have simply failed to do so.[5]

Judgment is affirmed.

White, P. J., and Chin, J., concurred.

---

[4]Appellants' claim of injury is especially tenuous given the fact that respondents' applications have yet to be acted on by the Department or the Reclamation Board. Presumably, if the applications are in violation of the competitive bidding requirements of SB 1893/article 60.5 they will not be approved and, if erroneously approved, they can be challenged.

[5]In a signed declaration, John Winther, president of Delta Wetlands, states that District No. 2026 has over $579,000 worth of its own equipment and over 50 employees on its payroll engaged in levee work. He opines that if the district is prevented from using its own forces to do this kind of work, it will "sustain substantial losses and its employees will have to be discharged." He adds, "If Reclamation District No. 2025 is restrained, it would be similarly impacted."