[No. C028540. Third Dist. Apr. 27, 1999.]

CONSTRUCTION INDUSTRY FORCE ACCOUNT COUNCIL et al.,
Plaintiffs and Appellants, v.
AMADOR WATER AGENCY, Defendant and Respondent.

■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■

COUNSEL

Stanton, Kay & Watson and Ralph E. Livingstone for Plaintiffs and Appellants.

Bartkiewicz, Kronick & Shanahan, Alan B. Lilly and Stephen A. Kronick for Defendant and Respondent.

McMurchie, Brandenburger, Weill, Lenahan & Lee, David W. McMurchie and Vicki E. Hartigan for California Special Districts Association as Amicus Curiae on behalf of Defendant and Respondent.

Kronick, Moskovitz, Tiedemann & Girard and Janet K. Goldsmith for Association of California Water Agencies as Amicus Curiae on behalf of Defendant and Respondent.

OPINION

NICHOLSON, Acting P. J.—Plaintiffs[1] brought this action to challenge the statutory authority of defendant Amador Water Agency (Agency) to complete a project valued in excess of $130,000 by using its own personnel rather than by advertising for bids from outside contractors. Because this case turns on statutory interpretation, the parties submitted the matter to the superior court on stipulated facts. The superior court entered judgment in favor of the Agency. After independent review of the pertinent statutes (*Cal-Air Conditioning, Inc.* v. *Auburn Union School Dist.* (1993) 21 Cal.App.4th 655, 666 [26 Cal.Rptr.2d 703]), we affirm.

BACKGROUND

The Legislature created the Agency by an uncodified act in 1959. (Stats. 1959, ch. 2137, § 1, p. 5061.) Under section 3.6 of this enabling act, "The

---

[1]They are the Construction Industry Force Account Council (a trade association), the Construction and General Laborers' Local 185 (a member of the trade association), and Mike Dorris and Jeff Ballard (individual members of Local 185).

agency shall have the power to make contracts, employ labor and to do all acts necessary for the full exercise of its purposes and powers. The board may cause construction or other work to be performed or carried out by contracts or by the agency under its own superintendence." (*Id.*, § 3.6, p. 5063.)

In 1984, the Legislature repealed provisions pertaining to public contracts in the various uncodified water agency acts and collected them in one chapter of the Public Contract Code (undesignated section references will be to this code). (See Legis. Counsel's Dig., Assem. Bill No. 2556, 4 Stats. 1984 (Reg. Sess.) Summary Dig., p. 383.) According to the article governing the Agency, its provisions "shall apply to contracts by the . . . Agency" (§ 21450) and "[a]ll contracts for any improvement or unit of work, when the cost according to the estimate of the engineer will exceed . . . ($12,500), shall be let to the lowest responsible bidder . . . as provided in this article. . . . The board may reject any bid. If all proposals are rejected or no proposals are received, or the estimated cost of the work does not exceed . . . ($12,500), or the work consists of channel protection, maintenance work, or emergency work, the board may have the work done by force account without advertising for bids. . . ." (§ 21451.)

According to the stipulated facts of the parties, in June 1996, the Agency began planning for the installation of a water pipeline with 15 service connections and various related facilities. According to the estimates of its engineers, the pipeline would cost at least $120,000 (rounded) to install. This was not construction involving channel protection, maintenance work, or emergency work. The Agency did not advertise for bids from outside contractors, but instead used its own employees to design and construct the project, completing it in June 1997.[2] The project ultimately cost $133,000 (rounded).

Although the plaintiffs had initially sought an order restraining the Agency from proceeding on the project with its own employees, they ultimately allowed the project to go forward. Instead, they sought declaratory relief and a permanent injunction against the Agency to prevent it from using its own employees and equipment in the future to construct any project

---

[2]Although the Agency completed the project before the superior court entered judgment, we do not consider the matter moot because the plaintiffs sought relief against future noncompliance with their interpretation of the statute and because "the issues presented are of public importance and should be set at rest so that [the Agency] may arrange for similar work without doubts as to the applicability of the bidding statute." (*Martin* v. *City of Corning* (1972) 25 Cal.App.3d 165, 170 [101 Cal.Rptr. 678]; accord, *M & B Construction* v. *Yuba County Water Agency* (1999) 68 Cal.App.4th 1353 [81 Cal.Rptr.2d 231].)

costing more then $12,500 and not involving channel protection, maintenance work, or emergency work. The court issued a statement of decision agreeing with the Agency's argument that section 21451 applied only when the Agency *chose* to contract for a particular project costing more than $12,500 and did not *compel* the Agency to enter into a contract for such projects.

## DISCUSSION

At issue in this case is whether section 21451 creates a so-called "force account limit," which is a ceiling imposed by statute on the value of public works projects which a local agency may perform without competitive bidding by outside contractors. (See *Lockheed Information Management Services Co. v. City of Inglewood* (1998) 17 Cal.4th 170, 184, fn. 13 [70 Cal.Rptr.2d 152, 948 P.2d 943].)[3]

In a nutshell, the plaintiffs argue section 21541, while not expressly stating the Agency *must* contract out for all projects costing over $12,500, nonetheless has that effect because otherwise the proviso allowing for performance by force account without bids when the cost estimate of the work is less than $12,500 (or for enumerated types of work or where there are no acceptable bids) would be meaningless. The plaintiffs also cite legislative committee reports (written in connection with a 1988 amendment to section 21451 that raised the dollar limit) as indicating a legislative intent that the Agency have no power to use force accounts for projects in excess of $12,500.

---

[3]There is little unanimity in the definition of a "force account." In *Jackson v. Pancake* (1968) 266 Cal.App.2d 307 [72 Cal.Rptr. 111], we noted generally that "work described as 'force account' (which by definition is limited to public work but by common usage has been applied to private building as well) . . . is . . . done where the owner acts as his own 'contractor' and hires out the work of the various artisans involved on a rate per hour or other basis of measurement." (*Id.* at p. 311 [cited in 51 West's Cal.Dig.2d, Words and Phrases, p. 234].) Similarly, in *Welch v. State of California* (1983) 139 Cal.App.3d 546 [188 Cal.Rptr. 726], we noted that when the state awarded work on a force account basis it generally meant "[t]he contractor is paid his actual costs plus a profit." (*Id.* at p. 557 & fn. 10.) The dictionary definition is phrased in terms of an accounting principle that distinguishes the costs of a public agency employing a labor force to perform work as opposed to contracting with an outside business to perform the same service. (Webster's New Internat. Dict. (3d ed. 1971) p. 887.) In the only definition of the term we have located among the uncodified water acts, the enabling act for the Kern County Water Agency defines a force account as work "performed under the direct supervision of the agency . . . and the use of day labor . . . or contracted labor, or the employees of the agency, or any combination thereof." (Stats. 1982, ch. 49, § 1, p. 146.) However, in connection with the regulations of the State Controller concerning county budget reports, and an opinion of the Attorney General regarding the application of prevailing wage laws, the definition of a force account is limited to work performed by the public entity's own personnel. (Cal. Code Regs., tit. 2, § 988; see 70 Ops.Cal.Atty.Gen. 92, 97 (1987).)

■ We start with the premise that, absent a statutory directive, a public entity is not bound to engage in competitive bidding. (*San Diego Service Authority for Freeway Emergencies* v. *Superior Court* (1988) 198 Cal.App.3d 1466, 1469 [244 Cal.Rptr. 440].) While there are "powerful purposes served by competitive bidding [e.g., preventing waste, favoritism, and corruption], there is no all-pervasive public policy that requires all public entities to engage in that practice. Rather, the Legislature imposes competitive bidding requirements on public entities within its purview when the Legislature determines it is in the public interest to do so." (*Ibid.*) Competitive bidding is for the protection of the taxpaying public and not for the benefit and enrichment of the bidders. (*M & B Construction* v. *Yuba County Water Agency, supra,* 68 Cal.App.4th at p. 1360.) Competitive bidding provisions must be construed from a practical perspective, lest we deny the public agency the authority to deal with problems in a sensible, practical way. (*Ibid.*)

■ The axioms of statutory construction require us first to look at the words used by the Legislature. If the language is unambiguous, our task is finished. (*California School Employees Assn.* v. *Governing Board* (1994) 8 Cal.4th 333, 340 [33 Cal.Rptr.2d 109, 878 P.2d 1321]; *M & B Construction* v. *Yuba County Water Agency, supra,* 68 Cal.App.4th at p. 1359.) If the language is ambiguous, we then examine the context of the statute, striving to harmonize the provision internally and with related statutes, and we may also consult extrinsic indicia of intent as contained in the legislative history of the statute. (*Pacific Gas & Electric Co.* v. *County of Stanislaus* (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291].)

■ No one argues this statute has a plain meaning on its face. It would seem at its outset to apply only to *contracts* for projects estimated in excess of $12,500, and (as noted above) the Agency is authorized in its enabling act to perform construction either by contracting with outsiders or under its own supervision. However, the inclusion of the clauses regarding the types of work for which the Agency may use force account labor is at odds with that interpretation, because it would appear to apply to projects without contracts. We must thus go beyond the statute itself in seeking to resolve this conflict.

*Construction Industry Force Account Council* v. *Delta Wetlands* (1992) 2 Cal.App.4th 1589 [4 Cal.Rptr.2d 43] (*Delta Wetlands*) considered similar language in the article governing the contracts of reclamation districts. As with the Agency's article, the first provision states the article is to apply "to contracts by reclamation districts." (§ 20920.) The next section provides,

"All contracts for any improvement . . . in excess of . . . ($25,000) shall be let to the lowest . . . bidder, except as otherwise provided in this article." (§ 20921.) The article also contains exceptions similar to section 21451, permitting work "by force account or contract" without further bidding if there are no acceptable bids (§ 20925), and by noncompetitive contracts for emergency work (§ 20926). The *Delta Wetlands* court concluded that the language which stated the provisions applied to contracts could not on its face apply to work performed by the districts' own workers, it would be improper to infer such an intent from the language when the Legislature could easily have done so expressly (2 Cal.App.4th at p. 1594), and it would not further the purposes of competitive bidding to force a district to use outside contractors when it could complete a project itself. (*Id.* at pp. 1595-1596.) *Delta Wetlands*, however, is not directly on point because the reclamation district article does not have comparable language which explicitly states projects valued at less than the dollar limit can be completed by force account. Nonetheless, the two points made by *Delta Wetlands* have equal impact here.

We have undertaken the task of examining the analogous provisions in some threescore other articles in the Public Contract Code, as well as a scattering of uncodified enabling acts of other water agencies. There are at least 29 other Public Contract Code articles which have language paralleling that used in section 21451.[4] However, there are numerous statutes which explicitly except all work done by force account from competitive bidding requirements,[5] and others which explicitly prohibit use of force accounts for *projects* valued over a dollar threshold.[6]

As for the uncodified enabling acts, the boards of the Kings River Conservation District and the Antelope Valley-East Kern Water District are subjected to competitive bidding only where the work is not performed by force account using their own employees *and* the cost is over a dollar limit.

---

[4]These include sections 20991, 21020.2, 21071, 21081, 21091, 21101, 21111, 21171, 21196, 21201-21203, 21212, 21251, 21261, 21321, 21331, 21341, 21351, 21361, 21371, 21381, 21411, 21441, 21461, 21491, 21511, 21521, 21531, 21541, and 21641.

[5]E.g., sections 20642, 21042, 21161, 21565.

[6]E.g., former section 20783 ("When work is done by the district itself by force account, the amount shall not exceed . . . ($5,000)" and work over $25,000 shall be competitively bid); section 21221 ("In all work of improvement . . . when the expenditures exceed . . . ($4,000), the work shall be done by contract"); section 21271 ("All improvement . . . shall be performed in accordance with the following procedures" which prescribe when work by day labor, unbid contracts, and bid contracts); sections 21581, 21591, 21601, 21631 (all of which provide "Any improvement . . . when the cost . . . will exceed [x dollars] . . . shall be done by contract"); 21572, 21621/21623 (same requirement of contract when cost exceeds threshold amount).

(Stats. 1998, ch. 142, §§ 17, 19.) In more recently created agencies, there is an explicit dollar limit on *projects* which may be performed by force account (some by cross-reference to section 22032). (Stats. 1994, ch. 764, § 1; Stats. 1992, ch. 803, § 1, p. 3816; Stats. 1988, ch. 387, § 2, p. 1725; Stats. 1984, ch. 689, § 1, pp. 2558-2559; Stats. 1984, ch. 688, § 1, p. 2537.)

What *is* clear from this statutory hodgepodge is that the Legislature takes an ad hoc approach, whether by design or default, to the authority of these various public agencies to complete projects without competitive bidding by outside contractors. The Legislature has shown it can make clear (when it chooses to do so) whether projects must be bid or can be completed by the agency itself. Under these circumstances, it is improper to infer from the provision a limitation on the Agency's authority, nor does it advance the purposes of competitive bidding to infer a limitation.

This does not make the provision surplusage, as argued by the plaintiffs. There is no evidence the Legislature used the term "force account" in the Public Contract Code with the same narrow meaning given by the Attorney General's analysis of prevailing wage laws or the State Controller's rules for county budget reports, which is to say a definition limited to the use of a public agency's own employees. (See fn. 3, *ante.*) Indeed, to the extent the Legislature has considered the definition at all in connection with water agencies, it includes both an agency's own workers *and* outside personnel working under the agency's supervision. (*Ibid.*) Thus, "force account," as used in section 21451, limited in effect to the Agency's contracts, would apply to contracts with outside personnel working under the Agency's supervision. Thus interpreted, it would have the salutary effect of protecting the Agency's employees from excessive "contracting out" of work within their purview.

The committee staff analyses, which the plaintiffs cite, were generated in connection with raising the dollar limit in section 21451 in 1988. The difficulties of establishing the credibility of such sources minimize their probative value. (See *People* v. *Cruz* (1996) 13 Cal.4th 764, 795 [55 Cal.Rptr.2d 117, 919 P.2d 731] (dis. opn. of Anderson, J.).) Moreover, these are nothing more than the opinion of the committee's staff on the meaning of *existing statutes* in amending the dollar limit; as such, they are not entitled to any great weight in our analysis. (*Leffel* v. *Municipal Court* (1976) 54 Cal.App.3d 569, 573-574 [126 Cal.Rptr. 773].)

Consequently, we concur in the trial court's conclusion that section 21451 does not constitute a "force account limit" statute. The Agency was free to

complete the project using its own personnel, and is free to do so in the future without regard for the cost of a project. The plaintiffs consequently were not entitled to a declaration or injunction in their favor.

### DISPOSITION

The judgment is affirmed.

Callahan, J., and Hull, J., concurred.

A petition for a rehearing was denied May 21, 1999, and appellants' petition for review by the Supreme Court was denied August 11, 1999.