Filed 1/25/16; pub. order 2/18/16 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CONSTRUCTION INDUSTRY FORCE ACCOUNT COUNCIL, INC., <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> ROSS VALLEY SANITARY DISTRICT et al., <br><br>     Defendants and Appellants. | A139069, A139550 <br><br> (Marin County <br>   Super. Ct. No. CIV1202540) |

This is an action for mandamus and declaratory relief brought by plaintiff Construction Industry Force Account Council, Inc., a trade association whose membership includes unions, contractors' associations and contractors throughout California. Following discovery and a contested hearing, the trial court ruled that defendant Ross Valley Sanitary District (the District) lacked statutory authority under Public Contact Code section 20803 to engage its own work force to complete a sewer system improvement project costing over $15,000 without putting the project out for competitive bid and contract.[1] The trial court thereafter granted a peremptory writ of mandate commanding the District to, inter alia, cease and desist from taking further action with respect to about 139 miles of its small diameter sewer pipe with force account

---

[1] The District's Board of Directors is also a named defendant in these proceedings. For purposes of this appeal, the District and its Board of Directors are collectively referred to as "the District."

1

workers, and to conduct all future replacement of this pipe through competitive bid and contract.

The District has appealed this decision, challenging both the trial court's interpretation of Public Contract Code section 20803, as well as certain factual findings underlying its conclusion that the District undertook a "district project," within the meaning of the statute, costing in excess of the $15,000 statutory threshold. For reasons set forth below, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Section 20803 of the Public Contract Code was enacted in its original form in 1983 as part of Article 52, the provisions of which "shall apply to contracts by sanitary districts as provided in the Sanitary District Act of 1923 pursuant to Division 6 (commencing with Section 6400) of the Health and Safety Code."[2] (§ 20800.) Section 20803, in particular, provides: "When the expenditure required for a district project exceeds fifteen thousand dollars ($15,000), it shall be contracted for and let to the lowest responsible bidder after notice, subject to Section 20805." "District project," in turn, is defined for purposes of Article 52 as "any construction, reconstruction, alteration, enlargement, renewal, or replacement of sewer facilities which the district is authorized to do, including, but not limited to, the furnishing of supplies or materials for any such work." (§ 20801.)

In its original form, the statute applied to sanitary district projects exceeding five thousand dollars ($5,000) in value. In 1985, the statute was amended such that the dollar amount was increased to ten thousand dollars ($10,000), and in 1998, pursuant to another amendment, this amount was increased to the current level of fifteen thousand dollars ($15,000).[3] (Added Stats 1983 ch 256 § 95; Amended Stats 1985 ch 472 § 2; Stats 1998 ch 142 § 8 (SB 1860).)

---

[2] Unless otherwise stated, all statutory references herein are to the Public Contract Code.

[3] Historically, section 20805 derived from former Health and Safety Code section 6515.1, enacted in 1961 and amended in 1967 and 1975. (Former Health & Saf. Code,

2

The District, as a local sanitary district charged with operating and maintaining approximately 200 miles of collection sewer lines and 20 pumping stations in Marin County, is governed by Article 52. (See Health & Saf. Code, §§ 6400 to 6803.) Most of these sewer lines are "neighborhood" lines ten inches or less in diameter (referred to herein as small diameter sewer pipe). The District has long recognized the need to eventually replace about 139 miles of this small diameter sewer pipe, which has become old and dilapidated in many locations.

Historically, the District's work on its aging sewer lines has been accomplished by performing "spot repairs" on problematic sections of pipe. This work, as well as manhole rehabilitation or replacement, was performed by the District's in-house construction and maintenance personnel, which is comprised of varying numbers of full-time District employees, as well as by private contractors.

However, in recent years, a more modern technique known as "pipebursting" has become the preferred method for addressing problem areas along the District's sewer lines. In 2010, the District began experimenting with this new technique, which allows it to replace sections of sewer line by digging two holes about 350 feet apart, and then using a hydraulic pump to pull a torpedo-like device through the old pipe, bursting the old pipe and leaving a new pipe in its wake. With pipebursting, the District can replace 350-foot sections of pipe in about three days and without trenching, rather than engaging in weeks of work-intensive spot repairs.

In 2011, the District's Board authorized the hiring of a team of new employees capable of doing pipebursting work, as well as more traditional maintenance work, to address problem sections within the approximately 139 miles of small diameter sewer lines. Public meetings were held at which the Board discussed this plan. Plaintiff, in

§ 6515.1, as added Stats 1961 ch 1445 § 3, amended Stats 1967 ch 1017 § 1, Stats 1975 ch 367 § 3.) In 1983, former Health and Safety Code section 6515.1 was recodified as section 20803 when, as part of an omnibus reorganization, all contract-related requirements for public agencies were moved into newly-enacted Article 52 of the Public Contract Code. (Stats. 1983, ch 256, § 95.) Section 20800, in turn, was added as part of this statutory reorganization. (*Ibid*.)

attendance at these meetings, objected orally and in writing on the ground that the Public Contract Code required the District to put out to competitive bid any of its pipebursting work. The District, however, rejected plaintiff's position. Thereafter, in 2011 and 2012, the District used in-house workers to perform pipebursting work on several roads in Marin County.

On June 1, 2012, plaintiff filed its petition for a writ of mandate in Marin Superior Court, seeking a peremptory writ pursuant to Code of Civil Procedure section 1085 to compel the District to put out to competitive bid its "Capital Pipe Bursting Project" (hereinafter, Project). In this petition, plaintiff alleged that the Project exceeded $15,000 in cost, and had already been implemented using in-house workers on sewer lines at San Francisco Boulevard and Los Angeles Boulevard in San Anselmo, and at Bothin Road in Fairfax. The petition further alleged the District was proceeding in violation of section 20803 by refusing to comply with the statute's competitive bidding requirements with respect to the Project. Finally, the petition alleged plaintiff and its members would suffer irreparable harm if the District were permitted to continue violating the Public Contract Code's competitive bidding procedures.

After discovery and a contested hearing, the trial court entered a "Writ of Mandate" on May 10, 2013. This writ set forth the trial court's findings that section 20803 is a "force account limit" statute, and that the District's decision to hire and train a new "Capital Pipe Bursting Crew" was primarily for the purpose of replacing its aging pipes and, thus, constituted a "district project" under section 20801.

On June 19, 2013, plaintiff submitted for the court's consideration a "[Proposed] Judgment Directing Issuance of Peremptory Writ of Mandate to Respondents Ross Valley Sanitary District and Ross Valley Sanitary District Board of Directors and a Peremptory Writ of Mandate." The District objected on the ground that the writ of mandate entered May 10, 2013 constituted the judgment in this case, and that any further judgment would be "substantively improper." The trial court overruled this objection and, on July 18, 2013, entered judgment directing issuance of a peremptory writ of mandate to the District. On August 1, 2013, the clerk of the superior court executed the

4

peremptory writ of mandate, which commanded the District to: (1) cease and desist from taking further action with respect to about 139 miles of its small diameter sewer pipe with force account workers, (2) conduct all further and future replacement of the approximately 139 miles of sewer pipe ten inches in diameter or less through competitive bid and contract; and (3) conduct all further and future work in excess of the limits imposed by section 20803 through competitive bid and contract. This appeal ensued.

## DISCUSSION

"A writ of mandate lies 'to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; . . .' [Citation.] ' "Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty [citation]." [Citation.]' [Citation.] [¶] As to the petitioner's interest, the writ may not be issued where the injury is purely theoretical and the petitioner fails to show any benefit would accrue to him if the writ were issued, or that he will suffer any detriment if it is denied. [Citations.]" (*Steelgard, Inc. v. Jannsen* (1985) 171 Cal.App.3d 79, 83.)

Here, the District challenges the trial court's grant of the peremptory writ of mandate on the following grounds. First, the District contends the trial court misinterpreted section 20803 as a "force account limit statute" that required the District to put out for competitive bid any "district project" costing over $15,000. Second, the District contends two of the trial court's underlying factual findings lack the support of substantial evidence – to wit, that the District's pipebursting work constitutes a "district project" (§ 20801) and that this project exceeds $15,000 in costs. Finally, the District contends the trial court made several manifest errors of a procedural nature, including its decisions to reject the District's request for a statement of decision, to overrule its demurrer, and to issue a "second judgment" after the District had already filed a notice of appeal of the May 10, 2013 writ of mandate. We address these contentions below to the appropriate extent.

5

**I.** **Is Section 20803 A "Force Account Limit Statute" Requiring The District To Put Out For Competitive Bid Any "District Project" Costing Over $15,000?[4]**

Both parties recognize the primary issue on appeal is one of statutory interpretation, which we review independently. (*Cal-Air Conditioning, Inc. v. Auburn Union School District* (1993) 21 Cal.App.4th 655, 666.)[5] The rules of statutory interpretation are, of course, well-established. " '[O]ur fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.] We begin with the language of the statute, giving the words their usual and ordinary meaning. [Citation.] The language must be construed "in the context of the statute as a whole and the overall statutory scheme, and we give 'significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.' " [Citation.] In other words, " 'we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." [Citation.]' " [Citation.] If the statutory terms are ambiguous, we may examine extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences. [Citation.]' (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].)" (*Boy Scouts of America National Foundation v. Superior Court* (2012) 206 Cal.App.4th 428, 443.)

---

[4] Generally speaking, a "force account limit statute" is one that imposes a ceiling on "the value of public works construction, repair, and maintenance projects which local agencies may perform for themselves without 'contracting out' the work to private bidders." (See *Lockheed Information Management Services Co. v. City of Inglewood* (1998) 17 Cal.4th 170, 184, fn. 13; see also *Construction Indus. Force Account Council v. Amador Water Agency* (1999) 71 Cal.App.4th 810, 814, fn. 3.)

[5] Both parties have filed requests for judicial notice of the legislative history of section 20803, as well as its predecessor statutes. Neither party contends this legislative history is an improper subject for judicial notice and, accordingly, we grant the parties' requests.

"Additionally, ' "[w]e examine the history and background of the statutory provision in order to ascertain the most reasonable interpretation of the measure." [Citation.]' (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 543 [67 Cal.Rptr.3d 330, 169 P.3d 559].) Even where the plain language of the statute dictates the result, the legislative history may provide additional authority confirming the court's interpretation of the statute. (*Id.* at p. 544.)" (*Boy Scouts of America National Foundation v. Superior Court, supra,* 206 Cal.App.4th at p. 443.)

In our case, the District argues section 20803 should not be interpreted to require competitive bidding for district projects exceeding the $15,000 threshold amount. Rather, the District asks us to interpret section 20803 to permit a sanitary district to use in-house employees to complete a project regardless of total cost, and to require a district's compliance with the competitive bidding procedures in Article 52 only if it chooses to contract out to a third party a project meeting the $15,000 cost threshold. In promoting this interpretation, the District reasons as follows.

First, the District notes section 20803 contains no express statutory directive limiting a sanitary district's authority to perform force account work. The District then turns its focus to section 20800, another provision of Article 52, providing that "this article shall apply to *contracts* by sanitary districts." (Italics added.) According to the District, the term, "contracts," in section 20800 would be "pure surplusage" unless the provision as a whole is interpreted to mean Article 52 is triggered only when a district contracts out work.

We agree with the District's interpretation, if not its entire analysis. Like the District, we begin with the fact that section 20803 contains no express statutory directive limiting a sanitary district's authority to perform force account work. This silence is indeed significant. As our appellate colleagues in the Third District explain, when called upon to determine whether a statute sets a force account limit based on the value of a local agency's public works project, courts must "start with the premise that, absent a statutory directive, a public entity is not bound to engage in competitive bidding." (*Construction Indus. Force Account Council v. Amador Water Agency* (1999) 71

7

Cal.App.4th 810, 815 [*Amador Water*].)  The reason is this: "While there are 'powerful purposes served by competitive bidding [e.g., preventing waste, favoritism, and corruption], there is no all-pervasive public policy that requires all public entities to engage in that practice. Rather, the Legislature imposes competitive bidding requirements on public entities within its purview when the Legislature determines it is in the public interest to do so.' "  (*Ibid.*)

Nor can any such statutory directive be found in section 20800.  Like section 20803, section 20800 is silent with respect to force account work and, in particular, with respect to any supposed limitation on a sanitary district's right to rely on force account work rather than competitive bidding.  Rather, section 20800 simply states that Article 52 applies to "contracts by sanitary districts."  We agree with the District this provision, read in a straightforward manner, means Article 52, which includes section 20803, applies when a district contracts with a third party for public work, and not when a district relies on force account work.

Moreover, to the extent there is any ambiguity in the language of sections 20803 or 20800, we apply the above-stated rule requiring us to harmonize all parts of the entire legal scheme, giving significance to each word, phrase, sentence and part of the Act in pursuance of the legislative purpose, which, in this case, is to hold public entities to open contract bidding procedures so as to " 'guard against favoritism, improvidence, extravagance, fraud and corruption; to prevent the waste of public funds; and to obtain the best economic result for the public.' [Citations.]" (*Construction Industry Force Account Council v. Delta Wetlands* (1992) 2 Cal.App.4th 1589, 1595-1596 [*Delta Wetlands*].)  Reasonably construing sections 20800 and 20803 conjunctively in light of this legislative purpose, we are left to conclude that section 20803 only operates to require competitive bidding when a sanitary district contracts out a district project costing over $15,000.  Indeed, to interpret these statutes otherwise would require us to: (1) import language into the statutes restricting a sanitary district's autonomy to use force account work for certain projects that otherwise is not there and, (2) ignore clear language in section 20800 restricting application of Article 52 "to contracts by sanitary districts."

8

The law forbids both. It is equally improper to "read things into statutory provisions, particularly when they are clearly stated as here" (*Delta Wetlands, supra,* at p. 1594), and to render statutory language "mere surplusage" (*Brown v. Superior Court* (1984) 37 Cal.3d 477, 488). (See also *San Diego Serv. Auth. for Freeway Emergencies v. Superior Court* (1988) 198 Cal.App.3d 1466, 1472 ["A court should not presume the Legislature intended to legislate by implication. [Citation.] Although in years past it may have been necessary for courts to read into a statute provisions not specifically expressed by the Legislature, the modern rule of construction disfavors such practice"].)

Our need to respect the existing statutory language and overall legal scheme is particularly important in light of the legislature's demonstrated capacity to enact force account limit statutes that directly say what they mean – to wit, that a public entity may not complete a public work project with its own labor force, but must put the work out for competitive bid. (E.g., § 20642 ["When work is not to be done by the district itself by force account, and the amount involved is thirty-five thousand dollars ($35,000), or more, any contract for the doing of the work shall be let to the lowest responsible bidder . . ."]; § 20783 ["When work is done by the district itself by force account, the amount shall not exceed . . . ($5,000). When the expenditure required for the work exceeds . . . ($35,000), it shall be contracted for and let to the lowest responsible bidder"]. See also *Amador Water, supra*, 71 Cal.App.4th at p. 817 ["The Legislature has shown it can make clear (when it chooses to do so) whether projects must be bid or can be completed by the agency itself. Under these circumstances, it is improper to infer from the provision a limitation on the Agency's authority, nor does it advance the purposes of competitive bidding to infer a limitation"].)

At the same time, declining to accept the trial court's interpretation of section 20803 does not undermine the legislative policies reflected in the statutory scheme. As the *Delta Wetlands* court explained, the legislative goals of guarding against favoritism, corruption and fraud, and ensuring prudent expenditure of public funds are less relevant where a public entity opts to use its own work force rather than to engage in public contracting. (*Delta Wetlands, supra*, 2 Cal.App.4th at p. 1596.)

9

The legislative history provides further support for our conclusion. For example, an excerpt from the 1985 Legislative Counsel Digest, prepared in connection with the statutory amendment to increase section 20803's dollar threshold, states: "Under existing law, . . . [i]f a contract is for any unit of work or project estimated to cost in excess of $5,000, the contract shall be let according to specified bidding procedures. [¶] *This bill would increase to $10,000 the threshold amount which requires that a contract be let according to the bidding procedures*." (AB 1036 (Stats. 1985, c. 472 [italics added].) Similarly, the Legislative Counsel's Digest statement for the current version of section 20803 states: "Under existing provisions of the [the Local Agency Public Construction Act], a . . . sanitary district . . . , *when letting various contracts over a specified dollar amount*, [is] required to let the contracts to the lowest responsible bidder." (SB 1860 (Stats. 1998, c. 142 § 8 [italics added].) We agree with the District these statements suggest section 20803 applies only when a district chooses to contract out work rather than to use it own labor force. (See *Souvannarath v. Hadden* (2002) 95 Cal.App.4th 1115, 1126, fn. 9 [The Legislative Counsel's Digest "constitutes the official summary of the legal effect of the bill and is relied upon by the Legislature throughout the legislative process, [and] thus it is recognized as a primary indication of legislative intent"].)

We hasten to add, however, in agreeing with the District's proposed interpretation of section 20803, that we disagree with its reliance on two California cases, *Amador Water, supra*, 71 Cal.App.4th 810 and *East Bay Garbage Co. v. Washington Township Sanitation Co.* (1959) 52 Cal.2d 708 (*East Bay Garbage*). Simply put, neither case definitively answers the legal question raised herein of whether section 20803 is a force account limit statute. In *Amador Water*, for example, the reviewing court affirmed denial of injunctive and declaratory relief to the Construction Industry Force Account Council, after concluding the relevant Public Contract Code provision permitted, but did not require, the agency to let to bid a contract for certain construction work costing over $12,500. However, in *Amador Water*, the relevant statute was section 21451, not section

10

20803, which applies to water agencies and contains distinct statutory language.[6] (*Amador Water, supra*, 71 Cal.App.4th at p. 813, quoting § 21451.) In *East Bay Garbage*, in turn, the California Supreme Court was called upon to apply former Health and Safety Code section 6515.5, a predecessor statute to section 20803, which provided: "If the total cost of any work exceeds . . . ($2,500), the district shall publish a notice requesting bids therefor by publication for once a week for two consecutive weeks in a newspaper of general circulation in the county in which the district is located and award the contract to the lowest responsible bidder. . . ." (*East Bay Garbage, supra*, 52 Cal.2d at p. 711, citing former Health & Saf. Code, § 6515.5.) The issue there, however, was not whether former section 6515.5 should be interpreted as a force account limit statute, but whether the statute applies only to contracts requiring contract payments to be made by the sanitary district, or more broadly, as in that case, to contracts authorizing contract payments to be made by district ratepayers. (*East Bay Garbage, supra*, 52 Cal.2d at pp. 712-713.) In holding that the statute's competitive bidding procedures applied under either scenario, the California Supreme Court described former Health and Safety Code section 6515.5 as, "in effect, authoriz[ing] two methods for the district's handling of the work involved. The district might do the work itself or it might contract with someone else to do it. If the latter course were chosen, then where the expenditure involved was in excess of $2,500, no valid contract could be made unless the bids were publicly advertised as prescribed and unless the contracts were let to the lowest responsible bidder." (*East Bay Garbage, supra*, 52 Cal.2d at p. 713.) While the District insists this interpretation should carry over to section 20803 because section 20803 derives from

---

[6]     Unlike section 20803 (which, recall, provides that"[w]hen the expenditure required for a district project exceeds . . . ($15,000), it shall be contracted for and let to the lowest responsible bidder"), section 21451 provides that*"[a]ll contracts for any improvement or unit of work*, when the cost according to the estimate of the engineer will exceed . . . ($12,500), *shall be let to the lowest responsible bidder* . . . as provided in this article. . . . If . . . the estimated cost of the work does not exceed . . . ($12,500), or the work consists of channel protection, maintenance work, or emergency work, the board may have the work done by force account without advertising for bids. . . ." (*Amador Water, supra*, 71 Cal.App.4th at p. 813, quoting § 21451, italics added.)

11

former Health and Safety Code section 6515.5 , we agree with plaintiff the high court's description of former section 6515.5 is mere dicta. (See *Western Landscape Constr. v. Bank of Am.* (1997) 58 Cal.App.4th 57, 61 ["To determine the precedential value of a statement in an opinion, the language of that statement must be compared with the facts of the case and the issues raised. Only statements necessary to the decision are binding precedents; explanatory observations are not binding precedent"].)

Finally, in declining to interpret section 20803 as a force account limit statute, we acknowledge plaintiff's point that the legislature has, for the most part, taken an ad hoc approach to these sorts of public contract statutes. Indeed, in *Amador Water*, the reviewing court acknowledged the "statutory hodgepodge" contained within the Public Contract Code, explaining "that the Legislature takes an ad hoc approach, whether by design or default, to the authority of these various public agencies to complete projects without competitive bidding by outside contractors." (*Amador Water, supra*, 71 Cal.App.4th at p. 817.) Within this hodgepodge, for example, "there are numerous statutes which explicitly except all work done by force account from competitive bidding requirements, [fn. omitted] and others which explicitly prohibit use of force accounts for *projects* valued over a dollar threshold." (*Id.* at p. 816.) In a footnote, the court then identified the following statutes falling within the latter category of statutes "which explicitly prohibit use of force accounts for *projects* valued over a dollar threshold": former section 20783 ("When work is done by the district itself by force account, the amount shall not exceed . . . ($5,000)"); section 21221 ("*In all work of improvement . . . when expenditures exceed . . . ($4,000), the work shall be done by contract*"); section 21271 ("*All improvement . . . shall be performed in accordance with the following procedures*" which prescribe when work by day labor, unbid contracts, and bid contracts); sections 21581, 21591, 21601, 21631 (all of which provide "*Any improvement . . . when the cost . . . will exceed [x dollars] . . . shall be done by contract*"); sections 21572, 21621/21623 (same requirement of contract when cost exceeds threshold amount). (*Amador Water, supra*, at p. 816, fn. 6 [italics added].)

However, while acknowledging these apparent statutory inconsistencies, the law of statutory interpretation is nonetheless quite clear that we must focus on the statute at hand (to wit, section 20803), read in the context of the applicable statutory framework (to wit, Article 52), in order to decipher legislative intent. (*Boy Scouts of America National Foundation v. Superior Court, supra,* 206 Cal.App.4th at p. 443.) Indeed, consistent with this mandate, as stated above, the *Amador Water* court also pointed out, that "[a]bsent a statutory directive, a public entity is not bound to engage in competitive bidding." (*Amador Water, supra,* 71 Cal.App.4th at p. 815.) As such, whether these other statutes, applicable to public works of other local agencies, contain comparable language is largely, if not entirely, beside the point.

Accordingly, for all the reasons stated, we disagree with the trial court's conclusion that section 20803 constitutes a "force account limit" statute. To the contrary, we find nothing in the applicable statutory language or scheme that would limit the District's autonomy to complete its pipebursting project or projects using its own labor force. The District should thus be free to undertake future pipebursting projects with its own personnel without regard for the projects' overall costs.

Moreover, in light of our conclusion, plaintiff is not entitled to writ relief in this case. Simply put, the District owed plaintiff no statutory duty under section 20803 to submit its pipebursting project(s) to the competitive bidding process. (See *Steelgard, Inc. v. Jannsen* (1985) 171 Cal.App.3d 79, 83 [" 'Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty' [citations]"].) Reversal of the judgment is thus required.[7]

---

[7]　In light of our reversal of the judgment on this ground, we need not address the District's alternative arguments on appeal relating to, among other things, the sufficiency of the evidence supporting the trial court's underlying factual findings.

13

## DISPOSITION

The judgment is reversed, and the writ of mandate dated May 10, 2013, and peremptory writ of mandate dated August 1, 2013, are vacated. Costs on appeal are awarded to appellants.

_____
Jenkins, J.

We concur:

_____
McGuiness, P. J.

_____
Pollak, J.

14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| CONSTRUCTION INDUSTRY FORCE ACCOUNT COUNCIL, INC.,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ROSS VALLEY SANITARY DISTRICT et al.,<br><br>     Defendants and Appellants. | A139069, A139550<br><br>(Marin County<br> Super. Ct. No. CIV1202540) |

THE COURT:

     The opinion in the above-entitled matter filed on January 25, 2016, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

DATE: _____                       _____ P.J.*

∗    Justice Jenkins and Justice Pollak concur.

15

| | |
|---|---|
| Trial Court: | Marin County Superior Court |
| Trial Judge: | Hon. Roy Chernus, Judge |
| Counsel for Defendants and Appellants Ross Valley Sanitary District and Ross Valley Sanitary District Board Of Directors: | Jolie Houston, John F. Domingue, Thomas P. Murphy, Miles J. Dolinger Berliner Cohen |
| Counsel for Plaintiff/Respondent Construction Industry Force Account Council, Inc.: | Barry E. Hinkle, Patricia M. Gates, Roberta D. Perkins, Sharon Seidenstein Weinberg, Roger & Rosenfeld |